FRANK I. RIDGE v. HERBERT V. JONES, Receiver of CLARK ESTATE COMPANY, Appellant.—71 S. W. (2d) 713.

Division Two, May 17, 1934.*

*Cooper, Neel, Kemp & Sutherland* and *Shughart & Johnson* for appellant.

*Watson, Ess, Groner, Barnett & Whittaker* for respondent.

COOLEY, C.—Action for damages for personal injuries. Plaintiff recovered judgment for $12,500 from which defendant appealed. On and prior to January 4, 1929, the date of plaintiff's injury, the defendant operated a storage garage in Kansas City in which plaintiff, a physician and surgeon, kept two automobiles, one belonging to and used by himself and the other used chiefly by his wife. Under the storage agreement between plaintiff and defendant, called "live storage," the former was entitled to have defendant, through an employee, whenever so requested by plaintiff, bring his car to his home or take him home therein from the garage, which was near his office, and then take the car back to the garage.

On the evening of January 4, 1929, plaintiff called at the garage for the purpose of having defendant's employee, Ralph Anderson, who usually though not always performed that service, ride to his home with him and bring the car back to the garage, which was part of the service for which he paid defendant. Plaintiff and Anderson got into plaintiff's car and, with plaintiff driving, proceeded to plaintiff's home which was located on the west side of Walnut Street, a north and south street in Kansas City. The weather was inclement. For several days previously more or less snow had been falling, melting somewhat during the day and freezing at night, and at the time in question, about seven o'clock P. M., it was sleeting, from all of which it resulted that the street in front of plaintiff's home was covered with ice and sleet and, as the street had been used by traffic and by children coasting thereon, the surface was somewhat uneven, "rutty." Both rear wheels of plaintiff's car were equipped with chains. Plaintiff approached his home from the north. On arriving he found his wife's car parked at the west curb in front of the house, headed south. He first steered his car in toward the curb, then turned the front wheels outward toward the center of the street and brought the car to a stop a short distance behind his wife's car, with its right, or west, side four or five feet from the curb. The left, or east, side was slightly west of the middle line of the street. He so placed and stopped the car that when it should be started it could be driven forward toward the center of the street without further turning the front wheels and without striking the car in front. The rear part of the car, however, "overlapped" the east side of the car in front, from which it appears that it was stopped with the front wheels turned a little toward the left of the lengthwise axis of the car. After thus stopping his car plaintiff got out on the left or driver's side thereof and turned the car over to Anderson to be taken to the garage. He did not intend to walk around the car but meant to wait until Anderson had driven away and then to walk

directly to the curb. As he was getting out Anderson slid over to the driver's side behind the steering wheel. After getting out plaintiff closed the door of the car and while he stood beside and close to the car and, as he testified, before he had had time to let go of the door handle, Anderson let in the clutch and started the car suddenly and rapidly with a jerk or "lurch," causing the rear wheels to skid. Plaintiff was standing within six to twelve inches of the running board, nearer the rear fender than the front. The car skidded toward him. The running board struck his right leg, knocking him down, and the rear wheel passed over his ankle or leg. Both bones of his leg above the ankle were broken, one fracture extending into the ankle.

Walnut Street at that point slopes downward to the south. It is paved and, appellant claims, with a crown in the center from which the surface slopes toward the curb so that, in order to strike plaintiff, the car had to and did skid up grade. Respondent contends that the evidence does not show such crown and the slope toward the curb. The only evidence on that point consisted of the following questions put to plaintiff and his answers:

"Q. Is Walnut street at that point a wide or narrow street? A. Comparatively narrow street.

"Q. And is it the usual street there in front of the house with the crown in the center and sloping off to the curbs on each side? A. I would say it was just about like any ordinary street."

The evidence does not disclose how streets in Kansas City are ordinarily constructed with reference to having a crown in the center. Plaintiff's evidence tends to show that the sudden "jerking" start of the car under the conditions existing at the time would be likely to cause it to skid but does not show in which direction, whether toward or away from him, it would be likely to skid. The only evidence on that point was the testimony of defendant's witness, Anderson, who said that if started too quickly on an icy pavement a car may skid but "if the car is setting down hill, setting straight, usually the car, the back end will whip into the curbing instead of out from the curbing." Anderson denied that he had started the car quickly or with a jerk as described by plaintiff.

The case was submitted to the jury under the humanitarian doctrine, plaintiff's main instruction authorizing a verdict for him regardless of any contributory negligence on his part (which was pleaded by defendant) if the jury should find that the street was slippery; that the car stood on a downward slope and "that it was likely to lurch forward and sideways" if started quickly or rapidly; that such movement would be imminently dangerous to a person standing close beside it; that Anderson knew or in the exercise of the highest degree of care could and should have known such facts and could have started the car without causing it to "lurch or

·swerve;'' that while plaintiff was standing close to the car, ''in a position of imminent peril if the car should be suddenly started,'' Anderson knew or should have known that plaintiff was in such position and peril and negligently started the car in a quick and rapid manner causing it to lurch suddenly forward and sideways .and injure plaintiff.

I. Appellant contends that under the evidence the humanitarian ·doctrine is not applicable and that the court therefore erred in submitting the case on that theory, a contention with which we agree. Concededly the driver of the car could have done nothing after the ·car was started to have averted the injury. Concededly also the plaintiff was in no peril, imminent or otherwise, while standing be- ;side the car unless and until it should be started with such suddenness .as to cause it to skid—in other words, in a negligent manner. ·Plaintiff's case under his pleading and evidence, whether considered from ·the standpoint of primary negligence on defendant's part or of negligence under the humanitarian rule, is predicated upon the alleged negligent manner in which the car was started rather than ·upon the fact that it was started at all while he stood beside and ·close to it. The latter fact is not claimed to have constituted negligence and was not submitted as such in the instruction. The only peril that menaced plaintiff was created by the same negligent .act of defendant's driver which immediately and without time or ·opportunity for further action on the driver's part produced the injury. Appellant argues that his negligence under the humanitarian rule must be measured by his acts after the car started and that if the driver negligently started the car as claimed by plaintiff it constituted primary negligence, entitling him to the benefit of his claim that plaintiff was contributorily negligent, but was not negligence under the humanitarian rule. Respondent contends that if he was in a position such that to start the car in the manner in which his ·evidence shows it was started would place him in imminent peril and likely injure him and the driver so knew or should have so known before he started the car the humanitarian rule applies even though the same negligent act created the imminent peril and immediately produced the injury.

In support of this contention respondent cites Menard v. Goltra, .328 Mo. 368, 40 S. W. (2d) 1053; Bobos v. Krey Packing Co., 317 Mo. 108, 296 S. W. 157; Huckleberry v. Mo. Pac. Railroad Co., ·324 Mo. 1025, 26 S. W. (2d) 980; Weed v. Am. Car & Foundry Co., 322 Mo. 137, 14 S. W. (2d) 652; Stewart v. Mo. Pac. Ry. Co., 308 Mo. 383, 272 S. W. 694; Behen v. St. Louis Transit Co., 186 Mo. 430, 85 S. W. 346; Green v. Met. St. Ry. Co., 122 Mo. App. 647, ·99 S. W. 28. The last two cases do not discuss the humanitarian rule. They seem to proceed on the theory of primary negligence.

The Stewart case discusses the rule but holds it inapplicable to the facts there under consideration. The facts are not analogous to those of the instant case. In the other cases cited this court held the humanitarian doctrine applicable although the plaintiff was not in imminent peril except for the commission of the negligent act of the defendant which immediately produced the injury without time or opportunity intervening between such negligent act and injury for the defendant to have done anything to avert the injury; this on the theory, as we understand the cases, that the plaintiff was in a situation such that while not in imminent peril, absent the negligent act of the defendant in question, he was in imminent peril if such act was committed; not necessarily, perhaps, that *injury* was *certain* to follow the negligent act but that the *peril* was certain and imminent. In this respect we think the instant case is distinguishable from the cases referred to.

In Phillips v. Henson, 326 Mo. 282, 30 S. W. (2d) 1065, Division One of this court, which decided the Bobos and Huckleberry cases, had before it this situation: The plaintiff was riding a motorcycle westward on Easton Avenue in Wellston. The defendant was driving a truck eastward in the same street. Both were approaching the intersection of that street with Kienlen Avenue, a street running north from Easton Avenue. The defendant intended to turn to his left northward into Kienlen Avenue, which would take him across the plaintiff's line of travel. He did so turn without giving any signal or warning of his intention so to do. A collision resulted in which the plaintiff was injured. This court held that there was evidence from which a jury might find negligence under the humanitarian rule after the truck turned but that the defendant's negligence in failing to give a signal or warning of his intention to turn could not be considered in determining the question of negligence under the humanitarian rule. The court said:

"Plaintiff was not in peril until the truck turned to the left. Defendant's act in turning the truck without giving a signal or warning of his intention so to do might have been primary negligence, but it was not negligence under the humanitarian rule, because plaintiff was not in peril until the truck turned. Defendant's liability under the humanitarian rule depends upon whether plaintiff's injuries were caused by negligent acts of defendant after he saw or should have seen plaintiff in a position of peril. . . . We must determine whether or not the case was submissible under the humanitarian doctrine in the light of defendant's acts after the truck turned." [326 Mo. 1. c. 289, 30 S. W. (2d) 1. c. 1067.]

In State ex rel. Fleming v. Bland, 322 Mo. 565, 572, 15 S. W. (2d) 798, 800, the court, after discussing the principles underlying the humanitarian doctrine and reviewing prior cases, said:

"Many cases decided by this court impliedly hold a situation of

imminent peril is the basic fact of the humanitarian doctrine; that no duty whatever arises under that doctrine, unless and until a situation of peril comes into existence; and that when such peril arises the doctrine seizes upon the situation as it then exists and requires the one operating the dangerous instrumentality to exercise ordinary care in certain respects: to make timely discovery of the peril, if it was his duty to be on the lookout, and thereafter to avoid the infliction of the threatened injury, if he can do so with the means at hand and without jeopardizing the safety of himself and others. [See Banks v. Morris & Co., 302 Mo. 254; State ex rel. Vulgamott v. Trimble, 300 Mo. 92.]

"The ruling that the antecedent negligence of defendant may be taken into consideration in determining whether he was negligent under the humanitarian rule would in many cases permit an unwarranted recovery for primary negligence through the elimination, under the guise of that rule, of the defense of contributory negligence." [See, also, State ex rel. Vulgamott v. Trimble, 300 Mo. 92, 253 S. W. 1014; Banks v. Morris & Co., 302 Mo. 254, 257 S. W. 482; Ritz v. Cousins Lumber Co. (Mo. App.), 59 S. W. (2d) 1072.]

While the humanitarian rule was held applicable to the situations presented in the Menard, Bobos, Huckleberry and Weed cases, we do not think it should be extended to apply to the facts of the instant case. It is not sufficient to make a case under this doctrine that a person was in a place or situation where he might possibly be injured if another should do a negligent act. [State ex rel. Vulgamott v. Trimble, supra.] This question received careful consideration in the Vulgamott case. There the plaintiff had been riding in a freight car in which some horses were being transported. A partition had been constructed between the end of the car in which the horses were and the space in which the plaintiff rode. By rough and careless handling of the car in switching one of the horses was thrown violently against the partition, breaking it down and injuring the plaintiff. Suit was brought and recovery had on the humanitarian theory. In holding that the facts did not make a case on that theory, this court said, 300 Mo. l. c. 106, 253 S. W. l. c. 1018:

"This doctrine of the law . . . contemplates that the party was in imminent peril, and could have been saved from such impending peril by the exercise of ordinary care by the one inflicting the injury. . . . The basic principle is that there must be an imminent or impending peril which can be averted by the exercise of ordinary care. The petition in this case does not state this kind of a situation nor do the facts show it. The most that is either pleaded or proven is that plaintiff was in a place *where he might possibly be injured if the agents of defendant were careless and reckless in the handling of the car in which he was riding.*" (Italics ours.)

Elaborating the foregoing, the court said that the place where the plaintiff was riding was not a safe place to ride but was not so perilous as to bring it within the humanitarian rule; that the place was no doubt more dangerous than riding in the caboose, but said, 300 Mo. l. c. 109, 253 S. W. l. c. 1019:

"The word 'peril' as used in the rule of 'discovered peril,' 'humanitarian rule' or 'last chance doctrine' means something more than a bare possibility of an injury occurring. . . . Again, that a horse would be thrown against the partition and forced through it . . . was not an apparent peril, before the actual occurrence. Through all the cases and the texts runs the idea of 'peril,' and in a broader sense than the mere possibility of injury."

In Ziegelmeier v. East St. L. & Sub. Ry. Co., 330 Mo. 1013, 51 S. W. (2d) 1027, 1029, we said, quoting from the concurring opinion of WHITE, J., in Banks v. Morris & Co., supra, that "imminent peril," as the term is used in the humanitarian rule, does not mean remote, uncertain, contingent, nor (for the person affected) avoidable danger.

In Huckleberry v. Mo. Pac. Railroad Co., supra, 324 Mo. l. c. 1034, 26 S. W. (2d) 983, it is said: "From a reading of the principal and concurring opinions in the Banks case, it seems clear that 'imminent peril,' that is, certain, immediate and impending peril is there meant." The Banks case, by the court en banc, formulates the constitutive elements of a cause of action under the humanitarian rule.

In the instant case the plaintiff was in no peril before the car started. He was in no peril even then if it had been started slowly and carefully because according to the evidence had it been so started it would not have skidded. The evidence does not show that the car was certain to skid but only that it was likely to do so if started suddenly and rapidly—negligently—and if it should do so it was as likely to move away from as toward plaintiff. It is not contended that the driver intended to start the car in a negligent manner such as to cause it to skid or that he purposely did so, and as pointed out above there is no contention that plaintiff would have been imperiled by the starting of the car in a careful manner. We think that plaintiff cannot be said to have been in imminent peril within the meaning of the humanitarian rule until the car started, after which time the driver could have done nothing to avert the injury, and that said rule is not applicable to the facts and situation shown by the evidence. It was error therefore to submit the case to the jury on the humanitarian theory.

II. Appellant contends that his demurrer to the evidence should have been sustained because plaintiff was conclusively guilty of contributory negligence in that, knowing the condition of the street, the equipment of his car, etc., conditions that might cause it to skid,

and knowing that the driver intended and was expected to drive the car away without further notice or signal, he needlessly remained standing so close to the car as to be in danger of injury if it should skid toward him. This argument overlooks plaintiff's testimony that the car was started before he had time to let go of the door handle and step farther from the car and that the car was not likely to skid if started in a careful and proper manner. Plaintiff knew that the car was headed down grade and that the street surface was icy and uneven. He did not expect the driver to signal his intention to drive the car away. But he did not know or have reason to expect that the driver would start the car in a negligent manner calculated to cause it to skid, and it was the negligent manner in which the car was started that, according to plaintiff's evidence, caused his injury. The court could not say as a matter of law that plaintiff was guilty of contributory negligence. The demurrer to the evidence was properly overruled.

III. Appellant assigns error in that the court refused to give an instruction requested by him telling the jury in substance that if at the time of the accident plaintiff retained or assumed the right of control of the automobile and retained or assumed the right to control or direct the driver and that he did at said time exercise such control over the automobile and driver he could not recover. We think that instruction was properly refused because not supported by the evidence. According to the evidence of both parties the only direction plaintiff gave the driver was to take the car back to the garage, that he would use his wife's car that night. That direction was given before plaintiff got out of the car. When he got out and turned the car over to Anderson nothing was said. Such direction, if it may be so called, was nothing more than was included in the storage contract which obligated defendant to do that very thing upon request. When plaintiff thus turned the car over to defendant's employee he turned it over to defendant. It was then in defendant's custody. Under the circumstances and considering the contract under which the parties were acting, Anderson was at the time defendant's servant, not plaintiff's. It is true plaintiff testified on cross-examination that if one of defendant's drivers going to his home with him to bring the car back should drive it on the way to his home, which rarely occurred as he usually drove the car himself on such occasions, he would ''feel at liberty'' to tell the driver what direction to take, or to stop momentarily if occasion arose, or if the driver was driving too fast or otherwise improperly handling the car to call his attention thereto and ask him to desist. He did not testify nor was there any testimony that any such thing had ever occurred. A passenger in a taxicab might ''feel at liberty'' to do such things. We do not consider such evidence

sufficient to authorize the submission to the jury of the issue sought to be presented by defendant's refused instruction in view of the uncontroverted terms of the contract between the parties.

Andres v. Cox (Mo. App.), 23 S. W. (2d) 1066, and Holloway v. Schield, 294 Mo. 512, 243 S. W. 163, cited by appellant on this point are clearly distinguishable from the instant case in the controlling facts. Neither, in our judgment, is authority for appellant's contention under the facts of the instant case. Rather the contrary. Holloway v. Schield refers with apparent approval to Sweetman v. Snow, 187 Mich. 414, 153 N. W. 770, and Ouellette v. Superior Motor & Machine Works, 157 Wis. 531, 147 N. W. 1014, 52 L. R. A. (N. S.) 299, both of which are based upon facts sufficiently similar to those of the case at bar to make the decisions in point and which sustain our conclusion herein. So Andres v. Cox seems to approve Woods v. Bowman, 200 Ill. App. 612, which likewise lends support to our conclusion, as do Perry v. Fox, 156 N. Y. Supp. 369, Mulroy v. Tarulli, 180 N. Y. Supp. 427, and, in principle, though the facts are different, Neff v. Brandeis, 91 Neb. 11, 135 N. W. 232, 39 L. R. A. (N. S.) 933.

Appellant criticizes another instruction given for the plaintiff but we deem it unnecessary to discuss same. If the case is tried again on the same evidence it will be submitted on the theory of primary negligence instead of negligence under the humanitarian doctrine and the instructions should of course be framed appropriately to submit that theory. Neither is it necessary to consider appellant's contention that the verdict is excessive.

For the error noted in paragraph I hereof the judgment is reversed and the cause remanded. *Westhues* and *Fitzsimmons, CC.,* concur.

PER CURIAM:—The foregoing opinion by COOLEY, C., is adopted as the opinion of the court. All the judges concur.