BEN BLASER, Respondent, v. ALVIN COLEMAN and TOM MATTHEWS, Appellant.—No. 40248.—213 S. W. (2d) 420.

Court en Banc, September 13, 1948.

158

*Sapp & Miller* and *William H. Sapp* for appellants.

*William H. Becker* and *Howard B. Lang, Jr.,* for respondent;
*Clark, Boggs, Peterson & Becker* of counsel.

[421] DOUGLAS, J.—Ben Blaser recovered a judgment for $12,-500 for personal injuries sustained when he leaped from the bed of a runaway truck which had been abandoned by the driver. Defendant Alvin Coleman is the owner of the truck and defendant Tom Matthews was the driver. They have appealed.

Plaintiff stated both primary negligence and negligence under the humanitarian doctrine in his petition. However, he chose to submit his case to the jury only under the humanitarian doctrine.

The chief issue before us is whether plaintiff made a submissible case under the humanitarian doctrine. Other issues have been raised but most of them depend on the determination of that issue. We find while plaintiff has made a submissible case of primary negligence, he has failed to make a case under the humanitarian doctrine. Therefore, it was erroneous to submit his case to the jury on that doctrine.

The first step in determining whether a plaintiff has made a submissible case under the humanitarian doctrine is whether the evidence shows that he was in a situation of imminent peril. The next step is whether the defendant was negligent after the situation of imminent peril arose. A situation of imminent peril has been described as the basic fact of the humanitarian doctrine. This is for the reason that no duty is imposed on a defendant by that doctrine unless and until a situation of imminent peril has come into existence. Steuernagel v. St. Louis Public Service Co., 357 Mo. 904, 211 S. W. (2d) 696.

The meaning of the term "imminent peril" as the basic fact of the humanitarian doctrine has been well settled. The peril truly must be imminent—that is, certain, immediate, and impending; it may not be remote, uncertain or contingent. A likelihood or bare possibility of injury is not sufficient to create imminent peril. See State ex rel. Vulgamott v. Trimble, 300 Mo. 92, 253 S. W. 1014; Banks v. Morris & Co., 302 Mo. 254, 257 S. W. 482; Ridge v. Jones, 335 Mo. 219, 71 S. W. (2d) 713.

It is the fact that plaintiff is in a situation of imminent peril which imposes a duty on a defendant by the humanitarian doctrine. Negligence under the humanitarian doctrine results from the failure to perform such duty. It is obvious no such duty can be imposed before or prior to the time the situation of imminent peril comes into existence, only after that time. Even then there is no duty on a defendant to act unless after actual or, in some cases, constructive notice of plaintiff's imminent peril he has the present ability,

with the means at hand, to avert the impending injury to plaintiff without injuring himself or others.

Therefore, in determining whether the plaintiff in the instant case adduced evidence of negligence under the humanitarian doctrine, we must first determine if plaintiff was in a situation of imminent peril. If we find plaintiff was in imminent peril we must then fix the time when such peril arose so we can decide whether defendants could have thereafter prevented the injury.

The pertinent facts relative to these questions show that defendant Coleman furnished plaintiff's employer a dump truck to be used for hauling rock. He also furnished the driver of the truck and a helper. The sides of the truck were at least 7 feet above the ground. On the occasion under consideration plaintiff helped to load the truck with four tons of rock at a quarry deep below the surrounding surface of the ground. After the loading was completed the truck was driven to a scale where it was weighed. Then plaintiff got into the bed of the truck, the cab being completely occupied [422] by the driver, his helper and plaintiff's helper. The truck then proceeded out of the quarry, and up a steep macadam road with a 10% grade, leading to the highway. When the truck was near the top and at the steepest part of the grade going about 10 to 15 miles an hour, plaintiff testified he heard a grating and grinding sound such as when gears are being shifted without being properly synchronized. Then he heard something break, which later developed to be the rear axle. The truck was then going ten miles an hour. After the break it coasted forward about ten feet, stopped momentarily, and started rolling backward down the hill. The two helpers jumped out of the cab. Next the driver jumped. The truck then started swerving as it went backwards. After the truck had traveled backwards two lengths, plaintiff vaulted out of the truck breaking his ankle when he hit the ground. The truck continued to roll down the hill for about 30 yards where it jumped the ditch, backed into an embankment and stopped.

Plaintiff's evidence showed that the breaking of the axle did not interfere with the operation of the brakes. From his evidence we may also find that the truck was equipped with standard mechanical brakes which were in good shape. By applying the brakes the truck could have been brought to a stop under the conditions there existing within 8 or 10 feet. And by use of the emergency or hand brake alone, the speed of the truck could have been so slackened that it could have been kept under control and brought to a stop at the foot of the hill.

From the facts before us it is apparent that plaintiff, riding in the bed of a ton and one-half truck, with sides at least 7 feet high from the ground, loaded with four tons of rock, abandoned by the driver, and rolling backwards down a steep hill into a quarry, was in a

position of imminent peril. But in order to determine whether defendants are chargeable with negligence under the humanitarian doctrine we must ascertain what the evidence shows as to the time when such peril arose so we may decide whether defendants could have thereafter prevented plaintiff's injury.

When the axle broke plaintiff was not in imminent peril because that did not interfere with the operation of the brakes or prevent their use. The breaking of the axle may have created a likelihood or possibility of injury, but that is all. After the truck started to roll backwards it could have been stopped completely within 8 or 10 feet by the application of the brakes. Or, by the application of the hand brake alone, it could have been kept undèr control; guided down the road, and brought to a stop at the foot of the hill. So plaintiff was not in imminent peril before the driver jumped.

While the driver was at his post available to apply the brakes and thereby keep the truck under control plaintiff was not in imminent peril under the facts of this case.

Only after the driver left his post and jumped from the cab, abandoning the truck, did plaintiff's imminent peril arise. But after the driver jumped it was too late for any duty under the humanitarian doctrine to fasten upon defendants because it was then impossible to avert the accident. Defendants had no present ability with the means at hand to do so. The fact they put it out of their power to avert the accident in nowise affects the non-application of the humanitarian doctrine because the doctrine takes the facts as it finds them when the plaintiff's peril arises. See Spoeneman v. Uhri, 332 Mo. 821, 60 S. W. (2d) 9. Accordingly the humanitarian doctrine cannot apply under the facts of this case.

Even if it should be determined that the act of the driver in abandoning the truck was negligence, then such negligence occurred *before* plaintiff's imminent peril arose. Such condition cannot invoke the humanitarian doctrine. The doctrine may be applied only where negligence has followed *after* the imminent peril arose.

In a number of cases it has been well settled that negligence of a defendant which is antecedent to the time of imminent peril may not be considered in resolving the question of the application of the humanitarian doctrine. A plaintiff may not recover [423] under the humanitarian doctrine directly or indirectly for defendant's antecedent or primary negligence. Chastain v. Winton, 347 Mo. 1211, 152 S. W. (2d) 165; State ex rel. Fleming v. Bland, 322 Mo. 565, 15 S. W. (2d) 798.

Since the facts of this case show that defendants could have done nothing to avert plaintiff's injury after he was in imminent peril, the humanitarian doctrine does not apply, and it was error to submit the case to the jury on that theory. Accordingly the judgment must be reversed.

■ Although we reverse the judgment we will remand the case for new trial on the issues of primary negligence. Plaintiff has pleaded, and his evidence discloses a submissible case of primary negligence. Even though he abandoned for the time being his charges of primary negligence when he submitted his case solely on the humanitarian doctrine, still this court in its discretion may now remand the case for trial on such issues.

In Yoakum v. Lusk, Mo. Sup., 223 S. W. 53, we observed that where a charge of negligence had been pleaded and there was evidence tending to support it, this court could of its own motion remand the case for new trial upon such charge even though it had been abandoned at the previous trial. We have done so where the situation was the same as we have here. (See: Elkin v. St. Louis Public Service Co., 335 Mo. 951, 74 S. W. (2d) 600; Ridge v. Jones, 335 Mo. 219, 71 S. W. (2d) 713.) In each of these cases the plaintiff submitted solely negligence under the humanitarian doctrine and abandoned a pleaded charge of primary negligence. We remanded the cases for trial on the latter charge although we reversed the judgments because the humanitarian doctrine was not applicable. For the reverse situation see Strutman v. United Railways Co., Mo. App., 238 S. W. 817.

This practice is in accord with the general rule that where there are issues in the case which have not been determined below an appellate court will usually order a new trial after reversal. Keller v. Keller, 338 Mo. 731, 92 S. W. (2d) 157; Ducoulombier v. Thompson, 343 Mo. 991, 124 S. W. (2d) 1105; Markley v. Kansas City Southern R. Co., 338 Mo. 436, 90 S. W. (2d) 409; Byrne v. Prudential Ins. Co., Mo. Sup., 88 S. W. (2d) 344; Bach v. Diekroeger. Mo. App., 167 S. W. (2d) 934; 5 C. J. S., "Appeal and Error" 1942.

■ It cannot be said that plaintiff was guilty of contributory negligence as a matter of law merely because he rode in the bed of the truck. No peculiar circumstances are shown to indicate that riding there was patently or inherently dangerous. It is not an unusual practice to transport men in the beds of trucks where circumstances require. At the best, in this case it would be a question for the jury to determine whether plaintiff's position on the truck under the particular circumstances amounted to contributory negligence. See Weatherly v. Rabe, 334 Mo. 591, 66 S. W. (2d) 545. The cases of Smith v. Ozark Water Mills Co., 215 Mo. App. 129, 238 S. W. 573; Wininger v. Bennett, Mo. App., 104 S. W. (2d) 413; and other cases cited are not apposite under the facts.

Other issues are chiefly directed at the instructions. Since they involve questions under the humanitarian doctrine they need not be considered as that doctrine is now out of the case.

Judgment *reversed*, and cause *remanded* for new trial. All concur.