ROBERT D. CHENOWETH, Appellant, v. JAMES W. McBURNEY, Respondent, No. 40911—224 S. W. (2d) 114.

Division One, November 14, 1949.

*Edwin C. Orr* and *Carl F. Sapp* for appellant.

892

*Alexander, Ausmus & Harris* and *Warren D. Welliver* for respondent.

DOUGLAS, J.—This is a personal injury action for damages arising from a collision between ▬ plaintiff's truck and defendant's automobile on highway 54 about four miles east of Mexico. Plaintiff presented his case in the trial court on the humanitarian doctrine. Defendant counterclaimed on the ground that it was plaintiff's negligence which caused the accident, and defendant's resulting injuries. As to plaintiff's case, at the close of all the evidence, the trial court sustained defendant's motion for a directed verdict in favor of defendant and against plaintiff. The defendant's case on the counterclaim was submitted on primary negligence to a jury, and defendant recovered a verdict for $12,000 against plaintiff. Plaintiff has appealed.

Plaintiff makes two chief contentions on appeal. First, that he made a submissible case under the humanitarian doctrine; and second,

that his evidence established a submissible case under primary negligence, although he had presented his case solely on the humanitarian doctrine. The determination of these contentions depends on the evidence which we have reviewed and find it does not support either of them. We conclude the action of the trial court was proper, and the jury's verdict was supported by the evidence. The judgment must be affirmed.

The evidence most favorable to plaintiff shows that plaintiff was operating a 1940 Chevrolet truck weighing 6300 pounds used for farm purposes. He was driving east on highway 54 at about 5:30 p. m. on Saturday afternoon June 14, 1947 on his way home after making some purchases in Mexico. Highway 54 has a pavement 20 feet wide. The highway crosses the G. M. & O. railroad tracks by an overpass and then descends down hill to Bean Branch which is spanned by a concrete bridge. The bridge has concrete walls along each side. Plaintiff had driven over the overpass and was proceeding eastwardly down hill at 50 miles an hour. He came upon a tractor pulling a wheat drill going about 5 miles an hour. He started to pull over onto the left or the north side of the highway when he was about 100 feet to the rear of the wheat drill. He passed the tractor and wheat drill when it was opposite a drain basin or spillway built into the edge of the pavement. The drain basin is 368 feet west of the west end of the bridge by actual measurement. The bridge is 67 feet long. When plaintiff was passing the tractor at the drain basin, he saw defendant's automobile coming toward him from the east. Defendant's automobile was then at a point about 1000 feet east of plaintiff's truck or about 565 feet from the east end of the bridge. Plaintiff proceeded down the left-hand lane of the highway for about 250 feet after passing the tractor. When he was about 100 feet from the bridge he cut quickly over to his right and into the right-hand traffic lane. After he was in his own traffic lane he apparently lost control of the truck and its right rear wheel struck the end of the side wall of the bridge causing the truck to be projected over into the left lane and directly in front of defendant's automobile. The vehicles collided at a point about equidistant from the ends of the bridge.

In order to sustain his contention that these facts make a case under the humanitarian doctrine plaintiff argues he was in a position of imminent peril when he was in the left-hand traffic lane at the point where he passed the tractor, and defendant 1000 feet away. Hence, he argues, under the requirements of the humanitarian doctrine defendant was obliged at that time to take action and use the means at hand with safety to himself to avoid injury to plaintiff; either to reduce his speed or, if necessary to stop his car. We do not agree with plaintiff's argument.

Under the humanitarian doctrine a defendant is required to use the means at hand with safety to himself to avoid injuring a plaintiff

only when plaintiff is in a position of imminent peril. But in this case it can not be successfully maintained that plaintiff was in a position of imminent peril,—peril that was certain, immediate and impending,—at the time plaintiff was passing the tractor and defendant was 1000 feet away. The fact that plaintiff was not then in imminent peril is proved by what occurred subsequent to that time. After plaintiff passed the tractor he pulled over into the right-hand traffic lane while defendant was still some distance away. He completely removed himself from the pathway of defendant's automobile and drove into a position of safety. Thus plaintiff himself by his own actions demonstrated he was not in a position of imminent peril when passing the tractor as he now claims.

Imminent peril means that the peril truly must be imminent—that is, certain, immediate, and impending; it may not be remote, uncertain or contingent. A likelihood or bare possibility of injury is not sufficient to create imminent peril. See State ex rel. Vulgamott v. Trimble, 300 Mo. 92, 253 S. W. 1014; Banks v. Morris & Co., 302 Mo. 254, 257 S. W. 482; Ridge v. Jones, 335 Mo. 219, 71 S. W. (2d) 713; Blaser v. Coleman, 358 Mo. 157, 213 S. W. (2d) 420. While there may have been a possibility of injury had plaintiff remained in the left-hand traffic lane even that was removed when he was back in his own traffic lane and before he struck the bridge. It is clear that plaintiff was not in imminent peril at the time he claims.

Thus no duty to act under the humanitarian doctrine was imposed on defendant at the time plaintiff was passing the tractor since plaintiff was not then in imminent peril. The cases cited by plaintiff in support of his contention are not apposite under the facts.

Even though later on plaintiff did come into a position of imminent peril, still the humanitarian doctrine may not be properly invoked in this case because defendant had no time to avoid the collision after plaintiff was in such peril.

It was not until plaintiff's truck, after sideswiping the end of the bridge wall and losing a rear wheel and the transmission, was thrown directly into the path of defendant's immediately oncoming automobile that plaintiff came into a position of imminent peril. When plaintiff's truck struck the west end of the bridge, defendant's automobile was approximately at the east end of the bridge. The only evidence we have as to the distance in which defendant could have stopped his automobile under existing conditions is a space of approximately 125 feet at a speed of 50 miles per hour. Plaintiff estimated defendant's speed at 70 miles per hour which would require a longer distance in which to stop. The bridge is only 67 feet long. Thus the facts demonstrate that defendant could not have stopped in time to avoid the collision. Furthermore, vehicles on the bridge are confined by the side walls within the width of the paved roadway of the bridge. Thus swerving to the side and off the pavement if

required by the circumstances was impossible. So defendant was excused from acting because he did not have the present ability, with the means at hand, to avert the impending injury to plaintiff. He could not stop, he could not swerve. He could not avoid the collision by slackening his speed. See Blaser v. Coleman, 358 Mo. 157, 213 S. W. (2d) 420. We agree with the learned trial judge that plaintiff made no case under the humanitarian doctrine, and affirm his ruling in sustaining the motion for directed verdict.

However, plaintiff also argues here the evidence shows that defendant was guilty of primary negligence, so we should remand the case for trial on that issue.

We have remanded cases for trial on the issue of primary negligence where they were submitted solely on the humanitarian doctrine, and we found the doctrine was not applicable under the facts in those cases. But we have done this only where a charge of primary negligence was pleaded along with negligence under the humanitarian doctrine, and was supported by the evidence. Blaser v. Coleman, supra, and cases cited therein. In the case at bar primary negligence was pleaded in the petition but we find that the evidence fails to support the charge.

Even though plaintiff's truck was on its wrong side of the highway, still it was the duty of defendant to exercise the highest degree of care to avert a collision between the two vehicles. Wininger v. Bennett (Mo. App.) 104 S. W. (2d) 413.

We find from the evidence that defendant exercised such care— from the ▮▮ evidence produced by plaintiff himself. The defendant was called as a witness by plaintiff. He testified the traffic was heavy as usual on Saturday afternoon, and that he was looking ahead as he drove along the highway. He noticed a truck near the overpass coming in his direction. He saw the tractor, and saw an automobile over in his traffic lane passing the tractor. He next saw the truck over in his traffic lane. When the truck turned back to its own traffic lane he lost sight of it because it was obscured by the automobile ahead of it. He noticed that automobile passing him. He next saw the truck as it struck the wall of the bridge and was deflected over into the left traffic lane on the bridge. Defendant further testified he did not reduce the speed of his automobile because the truck was so far away when it was passing the tractor, and later the truck went over into its own traffic lane and passed for the time from defendant's view.

It was the duty of defendant to keep a careful watch ahead for other vehicles on the highway; and to fulfill this duty he was required to look in such an observant manner as to enable him to see what a person in the exercise of the highest degree of care for the safety of himself and others would be expected to see under similar

circumstances. Riley v. Young, 218 S. W. (2d) 805 and cases cited therein. A reading of the evidence reveals that defendant did keep a careful lookout ahead and observed all that occurred from the time plaintiff came over the overpass. Plaintiff lays much stress on defendant's answer to a question that he first saw the Chenoweth truck when it struck the side of the bridge. However the evidence makes it clear that defendant's answer was to the effect that he first *identified* the truck which he had previously seen near the overpass as the Chenoweth truck when it struck the bridge wall.

Plaintiff also argues that defendant was guilty of negligence in travelling at an excessive rate of speed when he was approaching the bridge. Ordinarily whether speed is excessive depends upon the condition of the highway and the surrounding circumstances. Defendant passed the automobile preceding the truck without incident as he entered the bridge. There is nothing whatever to indicate that defendant's speed would have prevented the truck from safely passing defendant's automobile if plaintiff had driven in his own traffic lane. The surrounding circumstances shown in evidence fail to show that defendant's speed was excessive.

Since the evidence shows no acts of primary negligence on the part of defendant we are not authorized to remand the case for a retrial on that issue. In this case there is another compelling reason why we may not do so. Here the jury were required to find in determining defendant's counterclaim, and did find, that defendant "was at all times in question driving his said automobile at said time and place in a careful and prudent manner, and was in the exercise of the highest degree of care for his own safety." In this situation we may not substitute our own findings for that of the jury even though the evidence might have been conflicting on the question of defendant's primary negligence which, in fact, we find it was not.

Other points raised by plaintiff have been answered in determining the issues passed on herein. The trial court was correct in sustaining a directed verdict against plaintiff on plaintiff's case. The evidence supports the verdict for defendant.

Accordingly, the judgment is *affirmed*. All concur.