243 S.W.2d 539 (1951)
GIRRATONO
v.
KANSAS CITY PUBLIC SERVICE CO.
No. 21619.
Kansas City Court of Appeals, Missouri.
November 5, 1951.
*541 Charles L. Carr, Frank J. Rogers, Kansas City, for appellant.
Thomas E. Hudson, David T. Cavanaugh and Hudson, Whitcraft & Cavanaugh, Kansas City, for respondent.
DEW, Judge.
The respondent was plaintiff in the trial court and brought this action to recover damages for personal injuries claimed to have been incurred through the negligence of the defendant (appellant). The verdict and judgment were in favor of plaintiff in the sum of $7,500, and the defendant has appealed.
The plaintiff's petition avers, in substance, that on January 1, 1948, he was a fare-paying passenger on one of defendant's buses bound eastward on Independence Avenue in Kansas City, Missouri, and that at the intersection with Prospect Avenue, the operator of said bus set the plaintiff down and caused him to alight from the rear door of the bus near to and against a large bank of snow, and immediately thereafter started the bus forward in such manner as to cause it to skid upon the pavement and strike the plaintiff down with great force and violence, causing the permanent injuries pleaded. The particular negligence alleged was in failing to provide and allow plaintiff sufficient room and space alongside defendant's bus within which safely to alight therefrom; failing to provide plaintiff a reasonably safe place in which to alight and depart from the bus; failing to allow plaintiff sufficient time to alight and reach a position of safety before starting the bus; starting the bus forward immediately after plaintiff had alighted therefrom in such manner as to cause it to skid upon the pavement, over, upon and against the plaintiff; operating the bus in such manner as to endanger the safety of plaintiff and others upon the roadway; failing to maintain a proper lookout *542 ahead and laterally to avoid injury to the plaintiff, which it should have done in the exercise of the highest degree of care. The petition further alleges, as a result of the carelessness and negligence described, that plaintiff suffered personal and permanent injuries, incurred medical expense, and loss of earnings, past and future, for all of which plaintiff prayed judgment for $15,000.
The answer of the defendant was in the nature of a general denial and plea of contributory negligence.
At the conclusion of the trial the defendant moved for a directed verdict in its favor, which was overruled by the court. In substance the grounds for that motion were: failure of the petition to state facts to entitle plaintiff to any relief; failure to prove defendant guilty of any act of negligence directly causing any injury to plaintiff; that plaintiff had alighted safely from the bus and was no longer a passenger at the time of the occurrence; that the mere showing of the skidding was no proof of negligence; that no negligent act on the part of defendant's operator was shown to cause the bus to skid, and no evidence that the manner in which the bus was started was likely or reasonably certain to cause it to skid into plaintiff. That motion was overruled by the court. After verdict and judgment defendant filed a motion for new trial and a motion to set aside the verdict and judgment, and to enter judgment for defendant, in accordance with its motion for a directed verdict. The latter motion adopted the grounds stated in the motion for a directed verdict and assigned the additional ground that the evidence was not sufficient to support a verdict in favor of plaintiff. These motions were overruled.
According to plaintiff's evidence, several inches of snow and sleet had fallen upon the streets the night before the accident, and they were slick. After signaling for a stop at Prospect Avenue, a regular stop, the bus stopped near the southwest corner of the intersection. Generally along the curb on the right hand side of Independence Avenue, including the place where the bus stopped, snow had been piled up about waist high, extending out into the street about three feet. There was a space of only about 18 inches between the snow bank and the right side of the bus at the furthermost of the rear exits at which plaintiff and two other passengers alighted. There was no path through the snow to the sidewalk at that point, but there was one near the front of the bus at the intersection by the sidewalk line. One of the passengers preceding the plaintiff had made his way forward to the clearing connecting with the sidewalk, and the second passenger had not yet reached that point when he noticed the bus spinning its wheels and skidding toward him, whereupon he threw himself over the snow bank and escaped, yelling as he did so, to warn the plaintiff. The plaintiff had no time to extricate himself from the position in the narrow strip between the bus and the snow bank before the bus was again put in motion and he was somewhat facing it when it started up, "speeded up and started skidding", spinning its wheels, and swerved into the plaintiff, knocking him down and injuring him as he described in his testimony. The bus continued forward at an angle, skidding further toward the curbline, and its rear demolishing a power pole near the sidewalk on Prospect Avenue, from whence it proceeded across the street and stopped, and the motorman returned to the scene of the accident.
The theory of plaintiff's case was submitted in his Instruction No. 1, which is as follows:
"Instruction One
"The Court instructs the jury that if you find and believe from the evidence that at the time and place referred to in evidence plaintiff was a fare-paying passenger on defendant's trolley bus on Independence Avenue, and that when said bus reached the intersection of Independence and Prospect Avenue the said bus stopped for the purpose of taking on and discharging passengers and that plaintiff exercising ordinary care for his own safety, if so, alighted from said bus at the rear door thereof near to and along side a large bank of snow, if you so find, and immediately thereafter, if so, before the plaintiff reached a position of safety, if you so find, and when the *543 operator of said bus saw or by the exercise of ordinary care should have seen that plaintiff had not yet reached a position of safety, if so, the operator carelessly and negligently started the bus forward in such manner as to cause it to skid upon the pavement, if you so find, and to strike and knock down the plaintiff, if so, and as a direct result of the negligence of the operator, as aforesaid, if you so find, the plaintiff was caused to be injured, if so, then your verdict shall be in favor of plaintiff and against the defendant."
It will be observed that the only act of negligence submitted by the above instruction was that after plaintiff had alighted, under the conditions pleaded in his petition and shown in evidence, the defendant "negligently and carelessly started the bus forward in such a manner as to cause it to skid upon the pavement and to strike and knock down the plaintiff."
Defendant's first contention is that the court erred in overruling its motion to set aside the judgment and to render judgment in its favor in accordance with its motion for a directed verdict. In support of its contention defendant asserts that the plaintiff had safely alighted from the bus and the relationship of passenger and carrier had terminated, and the only fault shown by plaintiff's evidence on defendant's part was that the bus skidded into him, which did not constitute negligence. The defendant argues that the case was, in effect, erroneously submitted on the res ipsa loquitur theory, and without evidence to justify the application of that doctrine in the case. It contends that the sole act of negligence submitted was general in character and that the evidence was insufficient to support a verdict thereon. The plaintiff denies that the case was submitted on the mere fact of skidding of the bus after the plaintiff had alighted, but that the other facts and circumstances shown in the evidence must be considered in the conduct of the plaintiff and the defendant.
Defendant's Point 1 involves first a matter of procedure. If plaintiff made a submissible case on any act of negligence pleaded, the court properly overruled the motion for directed verdict at the close of all the evidence. Defendant here confines its argument on Point 1 entirely to the nature, effect and want of proof of the sole issue of negligence thereafter submitted by the plaintiff in his Instruction No. 1. Such after-trial motion required the court to consider the record, not as of the time the motion for directed verdict was filed, but in the light of and as supplemented by the subsequent record, which disclosed what act of negligence had been submitted to the jury. For the purpose of the after-trial motion to set aside the judgment and to enter judgment for defendant, no act of negligence pleaded but not submitted could then be considered. If recovery on the sole issue submitted was improper, the verdict and judgment should have been set aside on the after-trial motion.
Sections 112 and 113 of the new Code, RSMo1949, §§ 510.280, 510.290, abolish the demurrer to the evidence and substitute the motion for a directed verdict. The motion for a directed verdict under the new code challenges, as did the former demurrer to the evidence, all the assignments of negligence covered by the pleadings. If the motion is overruled and the plaintiff thereupon submits only part of such assignments, he does so with knowledge that such assignment or assignments so submitted had been challenged, and the court is deemed to have known, when it permitted such submission, whether it regarded the issue or issues submitted had been supported by sufficient evidence. Thereafter, when the defendant renews his objections by his after-trial motion to set aside the judgment and for judgment in his favor, then (as in the case of the old demurrer to the evidence when the objections were renewed by motion for new trial), the objections are deemed to be directed to and leveled at only the issues of negligence submitted, and all assignments not submitted to the jury are, as formerly, for the time being, considered waived and discarded by the plaintiff. The appellate court is not bound to search the record for other assignments which the evidence may have made submissible. Guthrie v. City of St. Charles, 347 Mo. 1175, 152 S.W.2d 91.
*544 The effect of Sections 112 and 113 of the new code is that upon the overruling of a motion for a directed verdict at the close of all the evidence, the authority of the court to determine the legal questions thereby presented, and to set the judgment aside and enter judgment for defendant, without ordering a new trial, is not exhausted by its refusal thereof. If the motion for directed verdict be refused, the court is deemed to have submitted the cause to the jury subject to a later determination of the legal questions so raised, if again presented after verdict and judgment, by the defendant on a motion to set aside the verdict and judgment and to enter judgment in accordance with the motion for a directed verdict. In such event the court may then again consider and pass on the legal questions theretofore raised, but upon the whole record. We deem the words "in accordance with his motion for directed verdict" as a reference to the summary method of disposing of the case without retrial, and does not mean that the court must consider the record only as it stood at the close of all the evidence, thus substituting a moot question for a real one. "The primary purpose of motions under Sections 113 and 114 is to obtain the correct judgment without the expense and delay of a new trial." The Civil Code Act of 1943, Judge Hyde and Judge Douglas, Carr, Missouri Civil Procedure, Vol. 2, page 560.
Thus in the instant case, the court having overruled the defendant's motion for a directed verdict at the close of all the evidence, it had the authority, upon the filing of the after-trial motion in question, to take into consideration solely the issue of negligence submitted by the plaintiff, to which issue alone the attack is confined, the issues not submitted being treated as abandoned for the present by the plaintiff.
Applying the foregoing to the case at hand, we must determine whether or not, under the law and the evidence, the sole issue submitted by the plaintiff was submissible. The defendant contends that the issue of negligence submitted was general in character. If so, in view of the fact that the plaintiff also pleaded other acts of negligence, one or more of which we deem specific in character, then, under a well established rule, the plaintiff had no right to submit the issue submitted, or any other general issue of negligence. He must recover, if at all, on one or more of his assignments of specific negligence pleaded and proved. Burger v. Trimble, 331 Mo. 748, 55 S.W.2d 422; Barber v. Kellogg, Mo., 123 S.W.2d 100, 102; Raymond, Missouri Instructions, Vol. 1, page 54, Section 66.
Let us then consider whether or not the assignment of negligence submitted was general. The responsibility of defendant carrier toward plaintiff as a passenger, cannot be said, as a matter of law, to have been terminated upon the mere alighting from the bus by the plaintiff, under the circumstances and conditions shown in the plaintiff's evidence. If in fact the plaintiff was discharged upon the place in the street where, immediately and before he had time to remove himself therefrom, any motion of the bus might render his position perilous, the defendant was charged with knowledge of the plaintiff's position and it remained duty bound to use the highest degree of care not to operate the bus so as to endanger the plaintiff. It was said in Paul v. Met. St. Ry. Co., Mo.App., 179 S.W. 787, 788: "In the exercise of the highest degree of care towards his passengers, the conductor of a street car, in any event, should see and know that no passenger is in the act of alighting or otherwise is in a position which would be rendered perilous by the motion of the car when it is again put in motion, and a failure to perform that duty is held by the great weight of authority to be negligence. Booth on Street Railways, § 349; Nellis on Street Railroad Accident Law, 92; [Birmingham Union] Railway v. Smith, 90 Ala. 60, 8 So. 86, 24 Am.St.Rep. 761; Anderson v. [Citizens' Street] Railway, 12 Ind.App. 194, 38 N.E. 1109; Patterson v. [Omaha & C. B.] Railway, 90 Iowa 247, 57 N.W. 880. See, also, note 11 L.R.A.,N.S., 140 et seq." (Italics supplied). See, also, Beahan v. St. Louis Public Service Co., Mo.App., 213 S.W.2d 253, 255.
*545 It is definitely settled that the mere skidding of an automobile is not of itself negligence of the driver. It was said in Annin v. Jackson, 340 Mo. 331, 100 S.W.2d 872, 876: "With reference to the skidding, it is well-settled doctrine that the mere skidding of a motorcar is, in and of itself, not negligence; that it is as consistent with the care as with negligence of the driver, and it may and as a matter of experience does occur without fault. (Citations.)"
In Polokoff v. Sanell, Mo.App., 52 S.W. 2d 443, it was said at page 445: "If the car had not skidded, it is manifest from the evidence that no part of it would have fallen into the ditch. Hence, plaintiff proved not only the casualty and her injury resulting therefrom, but established beyond peradventure that the skidding of the car was the efficient, immediate, and proximate cause of the casualty. There was no showing of any act of omission or commission on the part of defendant that could justify the inference of any fault on his part that caused the car to skid."
In Heidt v. People's Motor Bus Co., 219 Mo.App. 683, 284 S.W. 840, 841, the court said: "Now, the mere skidding of an automobile is not necessarily negligent, nor will negligence be presumed from the mere skidding without some fact or circumstance connected therewith from which negligence may be inferred. The skidding of an automobile or a motorbus, while being driven along a wet street at the rate of eight or ten miles an hour, may happen with the most careful driver, and therefore cannot be presumed to be negligent."
Bearing in mind the facts that the relationship of passenger and carrier had not, under plaintiff's evidence, terminated in the instant case, as a matter of law, and that the skidding of the bus alone would not constitute negligence, and there being no facts alleged, submitted or proved as to what the operator did or failed to do in the manner of starting his bus forward which caused the bus to skid upon the pavement and to strike the plaintiff, we conclude. that the assignment of negligence submitted was general in character. Boulos v. Kansas City Public Service Co., 359 Mo. 763, 223 S.W.2d 446.
Plaintiff does not contend that the case was submitted on the res ipsa doctrine and in his brief denies it was so submitted. He states here his theory to be that under all the conditions shown in evidence, of which the operator was charged with knowledge, it was negligent for the operator "to start" the bus while plaintiff was still in the act of alighting and had not reached a place of safety. That plainly is not the issue as submitted, which was, that under the conditions stated, the operator negligently started the bus forward in such a manner as to cause the bus to skid upon the pavement and to strike the plaintiff. It was error, therefore, to permit the case to be submitted on the allegation of general negligence in view of the specific negligence pleaded in the petition. Not only was plaintiff's Instruction 1 erroneous for so doing, but the court should have set the verdict and judgment aside on defendant's after-trial motion on that ground, if on none other. The record indicates, however, that upon a retrial and upon proper instructions, further evidence may be available on the plaintiff's part which may be sufficient to submit one or more properly pleaded acts of specific negligence. Ducoulombier v. Thompson, 343 Mo. 991, 124 S.W.2d 1105; Bach v. Diekroeger, Mo.App., 167 S.W.2d 934; Blaser v. Coleman, 358 Mo. 157, 213 S.W.2d 420.
The defendant makes the further point that the instruction erroneously assumed that plaintiff was in a position of danger, and permits the jury to find that the operator could have seen him in such position, without supporting evidence therefor. The instruction, after hypothesizing the fact of the relationship of carrier and passenger, the stopping of the bus for the purpose of discharging passengers, and the alighting therefrom by the plaintiff at or near a large bank of snow, then tells the jury that if they found that immediately thereafter, before plaintiff reached a position of safety, and that if the operator saw or could have seen plaintiff had not reached *546 a position of safety, and if they further found the act of negligence submitted and the resulting injury, their verdict should be for the plaintiff. Thus it was assumed by the instruction that at the time and place in question plaintiff was not in a position of safety, but in a position of danger, and that the operator saw or should have seen that the plaintiff had not yet reached a position of safety, without requiring the jury to find that he was in a position of danger. The matter of plaintiff's position of danger at the time and place in question was a fact for the jury's determination. It was error to give the instruction without requiring the determination of such fact by the jury.
Defendant's next point is that plaintiff's Instruction 2 authorized the jury to consider the necessary medical expense incurred by the plaintiff in the reasonable value thereof without testimony of the amount thereof or that the same was necessary. The instruction stated that the jury might "take into consideration any necessary expenses incurred by plaintiff to the reasonable value thereof for medical attention as a result of his said injuries which you find from the evidence he has incurred." The evidence showed plaintiff had paid Dr. Day $35 or $38 for his services between January 2 and January 16, 1948, and a hospital bill of "around" $37. Dr. Nigro attended him numerous times over a period of two years or more, but there was no evidence of his charge, nor of the reasonable value thereof. Another doctor examined plaintiff before the trial, but his charge, if any, is not shown. The verdict was $7,500 and it is impossible to determine how much was allowed by the jury for medical expenses. It was said in Murphy v. Kresge Co., Mo.App., 205 S.W.2d 252, 256: "Whatever the rule may be in other jurisdictions, it is well settled in this state that recovery may not be had for doctors' bills except upon proof. * * *
"`Damages of this character cannot be allowed except upon proof.' * * * `Proof of the liability paid or incurred is some evidence of the value of the services * * *, but when, as in this case, the evidence fails to show either the amount of the charge, or the reasonable value of the services, there is an entire failure of proof, and the jury should not be permitted to speculate in an effort to award full compensation for the actual damages suffered. Nor can it be said that the error was harmless. The verdict greatly exceeded the sum of the actual disbursements made by plaintiff. We are unable to know just how much of the excess represents damages of this character, but presumably the jury obeyed the instruction and allowed something for them. Under the pleadings and evidence it was error to direct this to be done.'" We believe appellant's criticism of plaintiff's Instruction 2 in the present case is, in this respect, well taken, and the instruction erroneous in that respect.
As to the point that Instruction 2 assumed negligence on the part of defendant as further contended by appellant, we do not find the instruction faulty in that respect, being conditioned upon a finding for plaintiff under other instructions. Nor do we find it erroneous in allowing damages for injuries and disabilities shown by the evidence without a finding that they were directly caused by defendant's negligence, as also argued by appellant, as such injuries and disabilities are sufficiently designated as those "directly resulting from the negligence as submitted in these instructions."
Defendant's next point is that the court erred in allowing the jury to inspect a written statement made by a witness before the trial. T. J. Wurdack was a witness for plaintiff. On cross-examination counsel tried to impeach his testimony by his written statement made before trial. It was offered with the exception of the following sentence: "I believe if operator had given us time to have gotten out of the way or over the snow bank, accident would not have occurred." Plaintiff's counsel insisted that the whole statement be read to the jury. The court permitted it to be read, properly omitting the statement referred to. On redirect examination, plaintiff's counsel, over the objection of the defendant, was allowed to read the whole statement, including *547 the sentence objected to. It is contended that the reading of the sentence was prejudicial and that plaintiff's counsel sought to convince the jury that the defendant was seeking to conceal valid evidence. After the night's adjournment, defendant's counsel asked the court to declare a mistrial on account of the above ruling of the court, which request was refused. If the sentence was properly omitted in the first reading of it, it was equally improper for opposing counsel to read it. The error may well have prejudiced the jury and it may be reflected in their verdict. Whether or not the matter was one for the sound discretion of the court, upon retrial the sentence complained of, if offered and again objected to, should not be read to the jury.
Defendant objects further to a somewhat broad inquiry by plaintiff's counsel into the military record of the plaintiff while on the stand, and claims that prejudice was engendered by it. The record does not show clearly that the subject was developed for any other reason than to show plaintiff's sound health and vigor prior to the accident, and it was largely a matter of the court's discretion in admitting it. We find no error in the ruling made relative to that matter.
Because of the necessity of a retrial of this cause it is not necessary for us to review the last point, namely, that the verdict was excessive. The question remains whether or not upon reversal of the judgment on appeal, this court may remand the case for retrial to permit the plaintiff to submit his case on one or more specific allegations of negligence as he may elect. The general rule was first enunciated in Yoakum v. Lusk, Mo., 223 S.W. 53, 56, where the court said: "Whilst the foregoing disposes of all the alleged negligence not abandoned by the plaintiff on the trial, yet if she has pleaded a substantial ground of negligence, and there is evidence tending to support it, this court can of its own motion remand the case for a trial upon that theory of negligence. We have sometimes so done."
In Blaser v. Coleman, 358 Mo. 157, 213 S.W.2d 420, wherein the plaintiff pleaded both primary negligence and negligence under the humanitarian doctrine, he submitted the humanitarian theory only, but proved primary negligence, because of which the Supreme Court reversed the judgment, but said, 358 Mo. at page 163, 213 S.W.2d at page 423: "Although we reverse the judgment we will remand the case for new trial on the issues of primary negligence. Plaintiff has pleaded, and his evidence discloses a submissible case of primary negligence. Even though he abandoned for the time being his charges of primary negligence when he submitted his case solely on the humanitarian doctrine, still this court in its discretion may now remand the case for trial on such issues. * * *
"This practice is in accord with the general rule that where there are issues in the case which have not been determined below an appellate court will usually order a new trial after reversal." (Italics supplied.) See, also, Lance v. Van Winkle, 358 Mo. 143, 213 S.W.2d 401, 404.
The rule was again recognized in the more recent case of Hunt v. Chicago, M., St. P. & P. R. Co., 359 Mo. 1089, 225 S.W.2d 738, 741, 742, with the further ruling that if, however, there is no suggestion that the case has not been fully developed and it appears that the submission was a matter of deliberate strategic conduct on the plaintiff's part, the case should not be remanded. In the instant case nothing appears of record that should prevent the exercise of our discretion in remanding the case.
Because of the errors hereinabove stated, the judgment is reversed and the cause is remanded for retrial. All concur.
The opinions in Bowers v. Columbia Terminals Co., 213 S.W.2d 663, and Bean v. St. Louis Public Service Co., 233 S.W. 2d 782, by the St. Louis Court of Appeals, appear to construe the rule to be that when a plaintiff submits only a part of his pleaded assignments of negligence he waives, forfeits and forever abandons for *548 all purposes and for all time any right to recover on some other pleaded act of negligence supported by the evidence, and that the same then become moot questions no longer in the case and beyond any further recognition by the appellate court. What we have said herein respecting the discretion of the appellate court to remand a cause for retrial upon assignments of negligence pleaded and supported by evidence not fully developed, but which were not submitted, may conflict with the above opinions of the St. Louis Court of Appeals in that regard, and we accordingly order the case to be transferred to the Supreme Court for its determination.