252 S.W.2d 83 (1952)
SMITH
v.
ST. LOUIS PUBLIC SERVICE CO.
No. 28404.
St. Louis Court of Appeals, Missouri.
October 21, 1952.
As Modified on Denial of Rehearing November 14, 1952.
Transferred December 8, 1952.
*84 Mattingly, Boas & Richards, Lloyd E. Boas, Edward F. O'Herian, King G. McElroy, St. Louis, for appellant.
James R. Anderson, St. Louis, for respondent.
Transferred to Supreme Court December 8, 1952.
HOUSER, Commissioner.
This is an action brought by John B. Smith against St. Louis Public Service Company on account of personal injuries sustained in a collision between a Cadillac automobile driven by plaintiff and a streetcar owned and operated by defendant. In the trial court plaintiff recovered a judgment for $1,500 from which defendant appealed.
The scene of the collision was the intersection of defendant's streetcar tracks and Walton Avenue in the City of St. Louis. At that point the tracks run approximately east and west and Walton Avenue, which is 30 feet wide, runs generally north and south. On the southwest corner of the intersection of the tracks and the street there was a grocery store building located 6 or 7 feet south of the south rail of the eastbound track. The store building was 20 to 30 feet deep. On the southeast corner of the intersection there was a filling station at which plaintiff was working on the day in question.
Viewing the testimony in the light most favorable to plaintiff it appears that plaintiff, who was taking a customer's car out for a test run after making repairs on the brakes, drove out of the south drive of the filling station into Walton Avenue. As he did so he applied the brakes. They worked perfectly. Turning north on Walton Avenue he operated the automobile at a speed of 10-15 miles per hour as he approached defendant's tracks. When about 15 feet south of the tracks he slowed down to 5-10 miles per hour and looked to his left or west. From that point he could see 31 feet to the corner of the store building and 15 feet beyond the building, or a total of 46 feet down the tracks. In order to see directly down the tracks to the west a person going north must be across both sets of tracks because they do not run straight after they enter Walton Avenue from the *85 west, but turn slightly to the south. Plaintiff did not see any streetcar when he looked to the west at a point 15 feet south of the tracks. At that time the streetcar was near the rear end of the store building. Plaintiff looked to his right and continued north at 5-10 miles per hour onto the tracks. The automobile was traveling 2 or 3 feet east of the center line of Walton Avenue. When the front end of the automobile was crossing the north rail of the eastbound streetcar tracks, at a speed of 5-10 miles per hour, the streetcar struck the left front fender and back to the left front door of the automobile. The streetcar, traveling 18-25 miles per hour, came into the intersection without stopping or slackening its speed or without sounding a bell of applying brakes. Plaintiff did not see the streetcar until it was within 2 or 3 feet of the automobile. An emergency application of the brakes was made when the streetcar was "a couple of feet" east of the center line of Walton Avenue. The impact knocked the automobile up against a telephone pole located north and east of the tracks. The streetcar stopped at a point variously estimated at 10 feet west, or 10 feet east, or 25 feet east of the east curb of Walton Avenue.
The cause was submitted to the jury on the theory of humanitarian negligence in failing to sound a warning of the approach of the streetcar, failure to slacken the speed of the streetcar, or failure to have stopped the same. Appellant's first point is that the court erred in overruling defendant's motion for a directed verdict because there was a complete failure to prove a humanitarian case on failure to warn, slacken or stop.
(1) Failure to warn. Taking the evidence most favorable to plaintiff, the automobile was traveling at a speed of 5 miles per hour and the streetcar was traveling 18 miles per hour. The speeds of both vehicles remained constant until the impact occurred. There was no evidence as to the distance or time required to stop the Cadillac automobile traveling at 5 miles per hour in low gear. Our courts, however, have taken judicial notice of the distance within which motor vehicles traveling at given speeds can be stopped as follows: a heavily loaded truck going up a 10% incline at 5 miles per hour can be stopped "almost instantly," See v. Wabash R. Co., Mo.Sup., 242 S.W.2d 15. A loaded truck traveling 2 to 5 miles per hour can be stopped "almost instantly, or within a very few feet", Dowler v. Kurn, Mo.App., 119 S.W.2d 852, loc. cit. 854, 857 [5]. A truck traveling 2 to 3 miles per hour can be stopped "`right now,' almost instantly, practically as quickly as he could push down the brake", Johnson v. Kansas City Public Service Co., 358 Mo. 253, 214 S.W.2d 5, loc. cit. 10. A truck when first started, running in low gear, can be stopped "in a very short distance", Peck v. W. F. Williamson Advertising Service in St. Louis, Mo.App., 68 S.W.2d 847, loc. cit. 850. An automobile not going over 10 miles per hour may be stopped "within a very short space", Davis v. Schroeder, 8 Cir., 291 F. 47, loc. cit. 51. On account of the blind corner the operators of the two converging vehicles could not see each other until they were approximately 46 feet apart. Plaintiff, after looking to his left when at a point 15 feet south of the tracks, saw no streetcar and thereafter drove onto the tracks until his front wheels were on the north rail of the tracks before the impact occurred, so that the automobile traveled approximately 22 feet after the time plaintiff looked to his left. At 5 miles per hour that required approximately 3 seconds, which would place the streetcar, traveling at 18 miles per hour, 81 feet west of the point of impact at the time the automobile was 15 feet south of the tracks. Before the motorman could see the automobile the streetcar had to travel 35 feet. This took approximately 1.3 seconds, during which time the automobile traveled 9.75 feet to a point 4.25 feet from the tracks and 12.25 feet (or 1.7 seconds) antecedent to the collision. Thus there was left a space of 46 feet and a time of 1.7 seconds after the automobile, was discoverable until the collision occurred.
No duty rested on appellant under the humanitarian doctrine until plaintiff was in a position of imminent peril. The zone of peril in this case was very narrow, only a few feet before plaintiff reached the *86 line of the overhang of the streetcar. Elkin v. St. Louis Public Service Co., 335 Mo. 951, 74 S.W.2d 600. The overhang of the streetcar was not shown in evidence, but it is clear that at the time the motorman first could have discovered plaintiff the automobile was within 4 or 5 feet of the tracks, and, therefore, less than 4 or 5 feet from the overhang of the streetcar. Assuming that plaintiff was then in a position of imminent peril at the instant plaintiff was first discoverable, further assuming as a fact that the speeds of the two vehicles were as we have stated, and taking judicial notice of the fact that the automobile could be stopped within a very few feeta very short spaceif not instantaneously, it is yet obvious that after plaintiff entered a position of imminent peril there remained an insufficient time for the motorman to have recognized plaintiff's peril and issued the warning, and for plaintiff to have heard the warning, realized his danger, applied the brakes and stopped the car. The court will take judicial notice of the fact that some time must elapse from the moment the motorman realizes the danger and the time the gong can be sounded; that it takes some time for sound to travel, and an appreciable time for the automobile driver's mind and muscular system to act, for the brakes to be applied, and for the car to be brought to a stop. Thomasson v. Henwood, 235 Mo.App. 1211, 146 S.W.2d 88; Stark v. Berger, 344 Mo. 170, 125 S.W.2d 870. To make a submissible case under the humanitarian doctrine on failure to warn the evidence must disclose that a reasonably sufficient time was afforded after peril was discoverable during which it was reasonably possible for all of these things to transpire. Kirkpatrick v. Wabash R. Co., 357 Mo. 1246, 212 S.W.2d 764, loc. cit. 769. It would be but guess or speculation to determine that within less than 2 seconds the motorman could have appreciated the danger, reacted and sounded the alarm, and that if plaintiff had heard and heeded it, he would have had time and would have been able to stop the automobile short of collision. More is required than the showing of a mere possibility that the accident might have been avoided. Smith v. Siedhoff, Mo.Sup., 209 S.W.2d 233. See also Thomasson v. Henwood, supra; Rafferty v. Levy, Mo.App., 153 S.W.2d 765; Bach v. Diekroeger, Mo.App., 167 S.W.2d 934; Stark v. Berger, supra; State ex rel. Wabash R. Co. v. Bland, 313 Mo. 246, 281 S.W. 690; Rollison v. Wabash R. Co., 252 Mo. 525, 160 S.W. 994.
In our judgment the evidence failed to make a case of failure to warn under the humanitarian doctrine.
(2) Failure to stop. Nor did plaintiff make a humanitarian case on failure to stop. Plaintiff offered no evidence as to the distance within which the streetcar, traveling at the various speeds estimated by plaintiff's witnesses, could be stopped. The distance within which the vehicle could have been stopped is a vital fact to be established by substantial and dependable evidence. Swain v. Anders, 235 Mo.App. 125, 140 S.W.2d 730. Such evidence is an essential element of proof under this assignment of humanitarian negligence. Sammons v. Kansas City Public Service Co., Mo.App., 179 S.W.2d 620, loc. cit. 623. True enough, plaintiff proved that at 5 miles per hour the streetcar could be stopped in 5 or 6 feet and that at 6 miles per hour it could be stopped in 6 or 7 feet, but this proof is not available to plaintiff, whose theory was that the streetcar was traveling 18-25 miles per hour. Elkin v. St. Louis Public Service Co., supra. Nor does plaintiff rely on this proof to make out his case. Instead, plaintiff relies on the rule that the distance within which a vehicle actually stopped after the collision may be considered in determining whether it could have been stopped short of the collision, and asserts that the streetcar actually was stopped either 23 or 38 feet from the point of collision. While this rule has been applied in cases of collisions between railroad trains and trucks, Smith v. Thompson, 346 Mo. 502, 142 S.W.2d 70; Dutton v. Kansas City Terminal R. Ass'n, 316 Mo. 979, 292 S.W. 718; Brown v. Alton R. Co., 236 Mo.App. 26, 151 S.W.2d 727; Neill v. Alton R. Co., Mo.App., 113 S.W.2d 1073; collisions between railroad trains and automobiles, Leavell v. Thompson, 238 Mo. App. 130, 176 S.W.2d 854; collisions between *87 railroad trains and wagons, Beier v. St. Louis Transit Co., 197 Mo. 215, 94 S.W. 876; collisions between streetcars and wagons, Ellis v. Metropolitan St. R. Co., 234 Mo. 657, 138 S.W. 23; Huckshold v. United Rys. Co. of St. Louis, Mo.App., 234 S.W. 1072; and collisions between automobiles and pedestrians, Robinson v. O'Shanzky, Mo.App., 96 S.W.2d 895, it should not be applied in a case where the difference between the weight of the objects colliding is vastly less than the difference between the ponderous weight of a railroad train and that of an automobile. In the case at bar the force of the blow delivered by the streetcar was sufficient to knock a Cadillac automobile a distance of some 18 to 20 feet into a telephone pole located 12 feet north of the rail and 7 or 8 feet east of the east curb line of Walton Avenue. In the case of a sharp, violent right angle collision between a streetcar and a heavy automobile the force and momentum of the streetcar, as a matter of physics and common knowledge, would be reduced an appreciable extent by the impact. The distance within which the streetcar could be stopped would be reduced to that extent and the reliability of evidence of the actual stopping distance after the impact as evidence of the potential stopping distance before the impact, would be destroyed. Wholly aside from this consideration, however, and allowing plaintiff the benefit of the rule, and taking the most favorable stopping distance as 23 feet, as suggested by plaintiff, there is still a failure of proof because there is no evidence in the record as to reaction time. We judicially notice that reaction time is required. Yeaman v. Storms, 358 Mo. 774, 217 S.W.2d 495, loc. cit. 498.
(3) Failure to slacken. Likewise, plaintiff failed to make a case on failure to slacken speed. Young v. St. Louis Public Service Co., Mo.Sup., 250 S.W.2d 689; Elkin v. St. Louis Public Service Co., supra. In addition to the lack of evidence of reaction time there was no evidence of the time or distance that must be allowed after the brakes take hold for the speed of the streetcar to have been reduced sufficiently to prevent a collision. This is not a case of "almost escaping," where only 3 or 4 feet of the vehicle had to pass over the tracks in order to avoid a collision, so that only a slight slackening of speed would have been necessary. The streetcar struck the left front fender and left door of the automobile. The greater portion of the automobile was south of the north rail of the track. It was incumbent on plaintiff to show, by direct or circumstantial evidence, what additional time or distance would have been afforded plaintiff by the slackening of the speed of the streetcar, and to what lesser speed the streetcar could have been reduced, in the time and distance available. See Hunt v. Chicago, M. St. P. Sammons v. Kansas City Public Service Co., supra.
In view of the foregoing we need not comment on the objections to Instruction No. 1, except to say that the instruction was not drawn in conformity with the rulings in Smithers v. Barker, 341 Mo. 1017, 111 S.W.2d 47; White v. Kansas City Public Service Co., 347 Mo. 895, 149 S.W.2d 375, and Harrow v. Kansas City Public Service Co., Mo.Sup., 233 S.W.2d 644.
It is a settled practice of appellate procedure that a judgment should not be reversed for failure of proof without remanding, unless the record indicates that all of the facts were fully developed and that no recovery could be had in any event. Lance v. Van Winkle, 358 Mo. 143, 213 S.W.2d 401. If there remain in the case issues which have not been determined below, an appellate court will usually order a new trial after reversal. In the particular factual situation present in the instant case, i. e. where plaintiff in a negligence suit pleads several assignments of primary negligence and negligence under the humanitarian doctrine, and at the conclusion of the evidence abandons the assignments of primary negligence and goes to the jury solely on the humanitarian doctrine, the appellate courts in a number of instances have remanded the cause for a new trial where the plaintiff failed to make a submissible case on the humanitarian theory. Elkin v. St. Louis Public Service Co., supra; Ridge v. Jones, 335 Mo. 219, 71 S.W.2d 713; Yoakum v. Lusk, Mo.Sup., 223 S.W. 53; Blaser v. *88 Coleman, 358 Mo. 157, 213 S.W.2d 420. That rule has not been applied where the appellate court is convinced that the plaintiff's course is more a matter of legal strategy than of misadventure, Hunt v. Chicago, M., St. P. & P. R. Co., supra, but nothing appears in this record to indicate that plaintiff, in abandoning the assignments of primary negligence, was attempting to secure a strategic advantage. We are not prepared to say that no recovery could be had in any event and in the interests of justice the judgment of the circuit court should be reversed and the cause remanded for a new trial, and the Commissioner so recommends.
PER CURIAM.
The foregoing opinion of HOUSER, C., is adopted as the opinion of the court.
The judgment of the circuit court is, accordingly, reversed and the cause remanded for a new trial.
BENNICK, P. J., and ANDERSON and HOLMAN, JJ., concur.