HAMELL

v.

ST. LOUIS PUBLIC SERVICE CO.

No. 28854.

St. Louis Court of Appeals.

Missouri.

May 18, 1954.

Abraham .Altman, William R. Kirby, St. Louis, for appellant.

Lloyd E. Boas, Robert E. Staed, St. Louis, for respondent.

HOUSER, Commissioner.

This is an action brought by Robert Hamell against St. Louis Public Service Company on account of personal injuries sustained in a collision between an automobile in which he was riding as a passenger and a bus owned and operated by defendant. From the judgment entered upon a jury verdict for defendant, plaintiff has appealed to this court.

The collision occurred at the intersection of Locust Street and Leffingwell Avenue in the City of St. Louis. Locust runs east and west and is 40–45 feet wide. Leffingwell runs north and south and is about 35 feet wide. All four corners are occupied by buildings which are built up to the sidewalk line. There is a stop sign located on the northwest corner of the intersection for the control of southbound. traffic but none on the northeast corner for the control of westbound traffic. It is slightly up-

grade both for westbound and southbound traffic approaching the intersection.

On March 18, 1950 at about 7:30 or 8:00 p. m. a southbound automobile in which plaintiff was a passenger was struck by a westbound bus. Plaintiff's petition charged both primary and humanitarian negligence but the cause was submitted to the jury solely on the theory of humanitarian negligence in failing to sound a warning of the approach of the bus and in failing to slacken the speed thereof.

Appellant assigns error in the giving of Instructions Nos. 7 and 8. Respondent contends that the instructions were properly given but that in any event, regardless of error, plaintiff was not prejudiced and the judgment for defendant should not be reversed for the reason that plaintiff failed to make a submissible case. Our first inquiry therefore is whether plaintiff made a submissible case. If not, other errors assigned would be immaterial, Bootee v. Kansas City Public Service Co., 353 Mo. 716, 183 S.W.2d 892, and the judgment for defendant should be affirmed.

According to plaintiff and plaintiff's driver they were following another automobile as they proceeded south on Leffingwell. At the intersection they made two stops, the first time when the car in front of them stopped; the second time at a point 3 or 4 feet north of the north curb line of Locust, after the preceding automobile had continued on across Locust. Plaintiff's driver Nathaniel Owen looked both ways, west and east, saw an automobile and the bus coming from the east, "down middleways of the block." Owen's car was then about one foot to the right of the center line of Leffingwell, and about 2 feet south of the stop sign. He could see "a good piece" east on Locust, "as much as a block." He did not know the distance between the westbound bus and the westbound automobile. He did not know—had "no idea"—how fast the bus was traveling. He looked west first and then looked east. He was stopped only a matter of seconds, "trying to give that car time to pass." Plaintiff testified that they stopped "just long enough for a man to

stop and change the gears of his automobile." According to Owen, when the westbound automobile crossed the intersection he "took off and started across * * started off in low gear." He testified: "After that car passed I figured I had time to cross ahead of the bus and I went out." He traveled southward "straight across Locust, * * * moving forward all the time." In making the crossing he looked straight ahead, neither to his right nor left, and did not at any time thereafter see the bus until after the collision, which occurred at the time he was sitting over the center white line of Locust, the front end of his vehicle then south of the center line. When plaintiff first saw the bus the front end of the automobile was almost to the center line of Locust. The automobile was then traveling 5–10 miles per hour. Owen fixed his speed at 5–10 miles per hour at the time of the collision. Plaintiff "kind of glimpsed around and saw" the bus "and it hit all at one time * * *." The accident "happened so quick I just glimpsed it; before I could look around it hit us." Although he did not know exactly how far away the bus was when he first saw it he would say 40 feet. At another point in his testimony he thought the bus was 40 feet east of the intersection when he saw it—40 feet east of the east curb of Leffingwell. He had no idea how fast the bus was traveling. It was moving fast but he could not tell how fast. Plaintiff continued to watch the bus from the time he saw it until the collision occurred. At the time of impact the automobile was about half way across the center line of Locust, still in low gear. A second passenger in the automobile testified that the speed of the automobile was from 8–10 miles per hour at the time of the collision and that the brakes on the automobile were never applied before the collision. The bus was on the right side of Locust somewhere between the center line and the north curb. The front of the bus hit the left side of the automobile at the left back door. A photograph shows damage from that point forward to and including the rear portion of the front left fender. Prior to the impact no warning was given by the bus that

it was not yielding the right of way to the automobile.

For defendant the bus driver and two bus passengers testified. According to them the southbound automobile came through the stop sign without stopping, at a speed variously estimated at from 25–40 miles per hour. As he approached the intersection the bus driver, Louis Pugh, looked to his left and right. When he first saw the automobile it was almost even with the stop sign, about 6 feet north of the north curb of Locust and at that time the bus was almost even with—about 5 or 10 feet east of—the east curb line of Leffingwell. The bus was then going about 10–15 miles per hour, traveling possibly 2 feet to the right of the center line of Locust. When the bus was even with the east curb of Leffingwell Pugh made an emergency application of the brakes. From the time he saw the automobile the bus traveled 22 or 22½ feet to the point of collision without decreasing its speed, and the automobile traveled 28–30½ feet to the point of collision. The automobile did not slow down in any fashion and the front end of the bus struck the left center section of the automobile. When the collision occurred the bus was over the center line of Leffingwell not more than a foot, and the front of the automobile was over the center line of Locust a foot or two, at the very most. Traveling at 15 miles per hour the bus could be stopped in 40 feet. At 10 miles per hour it could be stopped in 30 feet. Passenger Mr. Lord was aware of the slamming on of the brakes. There was definitely an application of the brakes, which occurred slightly after his wife threw up her hands. From the time his wife threw up her hands until the collision occurred it was at least a second. Passenger Mrs. Lord testified that, seated on the front right-hand forward seat in the bus, she first saw the automobile approximately 30 or 35 feet north of the intersection. She had the impression that it was not going to stop. She could tell it was not going to stop. When she first observed the automobile the front of the bus was approximately at the building line on the east

side of Leffingwell. The brakes were applied on the bus about the time she saw the automobile or immediately thereafter—a hard application of the brakes—and at the time of the actual impact the bus was traveling no more than 5 miles per hour.

The fundamental theory of plaintiff's case is that the automobile stopped for the stop sign before proceeding into the intersection and thereafter moved slowly from a point approximately 3 or 4 feet north of the north curb line of Locust into the intersection and forward in a straight line to a point a few feet south of the center line of locust, at which place the right-angle collision occurred. It is elementary that no duty whatever was imposed upon defendant under the humanitarian doctrine until a situation of imminent peril arose. The immediate question is whether there is sufficient evidence in this record available to plaintiff to show the time at which the situation of imminent peril arose and that thereafter defendant could have averted the collision by slackening the speed of the bus or issuing a warning of its approach. The extent or width of the zone of peril depends upon whether the driver of the automobile was oblivious of the danger of a collision with the approaching bus. If he was fully aware of the approach of the bus, its speed and the danger of collision the zone of imminent peril would be very narrow and would not come into existence until the automobile was actually in the path of the bus or so close thereto that the driver of the automobile could not stop short of its path. Yeaman v. Storms, 358 Mo. 774, 217 S.W.2d 495, and cases cited. On the other hand, if he was oblivious to the danger of a collision, the zone of peril would be widened considerably beyond the immediate path of the moving vehicle, and would commence when the driver of the bus saw, or by the exercise of the highest degree of care could have seen, that the driver of the automobile approaching the path of the bus was oblivious of the danger and intent on continuing across his path. Frandeka v. St. Louis Public Service Co., Mo.Sup., 234 S.W.2d 540. Owen, having seen the bus when it

was middleway of the block east of the intersection, had a general awareness of the approach of the bus but under the record facts the jury could find that he was not aware of the danger from the approach of the oncoming bus. Brungs v. St. Louis Public Service Co., Mo.App., 235 S.W.2d 81. He did not continuously watch the bus as it approached him. The fact that Owen once saw the bus did not prevent him from thereafter obliviously coming into a position of imminent peril. Marczuk v. St. Louis Public Service Co., 355 Mo. 536, 196 S.W.2d 1000. His attention was momentarily diverted by the passage of the westbound automobile which preceded the bus. When he first saw the bus he did not know —had no idea of—its speed and the jury could find, from all the facts, including his statement that he figured he had time to cross ahead of it and that he did not again look in its direction, that he was oblivious of the danger between the time he first saw it and the time of the collision. For the purpose of determining whether plaintiff made a submissible case we may assume that the driver of the car was oblivious of the danger.

It was dark. The headlights on both vehicles were burning. Defendant's operator, Pugh, saw Owen's automobile when it was at the stop sign, which must have been shortly before it came to a stop some 3–4 feet north of the north curb line of Locust Street. From this it could be inferred that Pugh saw the automobile come to a stop. When Owen saw the bus and the automobile preceding it in the westbound lane the bus was in the middle of the block. We may safely assume that the block was 300 feet long, in the absence of evidence to the contrary, Lilly v. Boswell, 362 Mo. 444, 242 S.W.2d 73, so that the bus was 150 feet from the intersection when Owen first saw it. It was then traveling 10–15 miles per hour. Its speed remained constant. Knowing the width of Leffingwell and the placement of the automobile at the time of impact the jury could find that the collision occurred some 168 feet west of the place where the bus was at the time Owen first saw the bus. Some 7.4 to 11.1 seconds elapsed from that time until the collision occurred. After the automobile stopped near the stop sign it did not immediately start up. A "matter of seconds" elapsed, long enough for Owen to shift his gears and to permit the westbound automobile to clear the intersection. Then the automobile started up in forward motion, in low gear, the driver Owen generally aware of the approach of the bus, but oblivious of the danger of collision, and entertaining the thought that he had time to cross ahead of the bus. He remained in low gear until the collision occurred, moving steadily forward in a straight line a distance of from 29–32½ feet to the point of impact. Pugh, chargeable with the duty to keep a careful watch laterally and ahead of the bus, could and should have seen the automobile as it entered the intersection, in low gear, proceeding at a speed which the jury might well infer was that of a man walking, or 3 or 4 miles per hour. When struck, Owen's automobile was going from 5–10 miles per hour. We may take judicial notice of the fact that at a speed of 5 miles per hour or less as it traveled across the north half of Locust, the automobile could have been stopped "almost instantly —within a few feet." Smith v. St. Louis Public Service Co., Mo.App., 252 S.W.2d 83. From the reasonable appearances of the situation (the automobile having stopped for the stop sign, permitted an eastbound automobile to clear the intersection, started up in forward motion, and headed straight into a major street intersection at a very low speed but steadily forward movement in apparent unconcern about the proximity of the bus), the jury properly could find that the automobile came into a position of imminent peril within a very few feet after it passed the north curb line of Locust and entered the intersection. From the relative speeds of the two vehicles and the position of the front end of the automobile as compared with the front of the bus at the time of impact, the jury could only conclude that the automobile entered the intersection a matter of several seconds before the collision occurred. From the fact that the trip of the automobile, in a straight and steady

course, from the north curb line of Locust to the point of impact covered a distance of 26–28½ feet at 5 miles per hour or less, while the bus during the same period was traveling a steady 10 miles per hour, taking the speeds most favorable to plaintiff, the jury could infer that the bus was twice or more than twice as far from the point of impact as was the automobile, shortly after the automobile entered the intersection proper; could infer that the bus was some 52–56½ feet east of the point of impact at approximately .3.46 to 3.73 seconds prior to the time of impact. We are not holding as a matter of law that a position of imminent peril arose at that time and place or under these particular mathematical calculations, but only that the jury could have made such a finding under the evidence. With the ability to stop within 30 feet at 10 miles per hour and allowing three quarters of a second, Vietmeier v. Voss, Mo.Sup., 246 S.W.2d 785, or 11¼ feet for reaction time, the jury could have found that the bus had sufficient time and space, under the humanitarian rule, within which to have stopped short of the point of impact. If the bus could have been stopped within that distance its speed could have been slackened in a lesser space, Smithers v. Barker, 341 Mo. 1017, 111 S.W.2d 47; Steger v. Meehan, Mo. Sup., 63 S.W.2d 109, and a case was therefore made on the humanitarian assignment of failure to slacken. For a closely comparable factual and legal situation see Lilly v. Boswell, supra. See also Kasperski v. Rainey, Mo.App., 135 S.W.2d 11, and Sollenberger v. Kansas City Public Service Co., 356 Mo. 454, 202 S.W.2d 25.

■ Defendant further contends that the evidence was insufficient to make a case on failure to warn under the humanitarian doctrine, but this is immaterial in view of the fact that a submissible case was made upon failure to slacken. Plaintiff was entitled to go to the jury on failure to slacken, under proper instructions, regardless of whether he made a submissible case on failure to warn. The two acts of negligence were submitted in the conjunctive and the proof of either would be suf-

ficient to authorize a verdict even though the evidence were insufficient to warrant the submission of the other. Wirth v. St. Louis County Transit Co., Mo.App., 253 S. W.2d 547, and cases cited.

This brings us back to the contention of appellant that the giving of Instructions Nos. 7 and 8, offered by defendant, constituted reversible error.

■ Instruction No. 7 directed a verdict for defendant upon a finding that "at the time the Chevrolet automobile * * entered a position of imminent peril it was then too late for the operator of the bus, in the exercise of the highest degree of care with the means and appliances at hand, consistent with the safety of the passengers on said bus, to have sounded a warning and to have slackened the speed of said bus and thereby have avoided the collision with the Chevrolet automobile * *." We approve the form of this instruction under the record facts. It submits the "then too late" converse of the essential "in time thereafter" clause of plaintiff's humanitarian Instruction No. 1. Defendant's evidence to support the hypothesis that at the beginning of the zone of imminent peril the bus was then too close to have prevented the collision has been reviewed, supra, and will be considered, infra, and need not be restated here. It is enough to say that it constituted substantial evidence justifying the giving of Instruction No. 7.

Instruction No. 8, purporting to be a sole cause instruction, directed a verdict for defendant upon a finding that " * * * the driver of said Chevrolet automobile drove it southwardly along and on Leffingwell Avenue into Locust Street without coming to a full and complete stop before so entering Locust Street in violation of a major stop sign * * * and drove in front of and in close and dangerous proximity to the bus when he saw or in the exercise of the highest degree of care could have seen that there was danger of a collision between the two vehicles, * * * and could have avoided said collision by remaining stopped or by stopping after hav-

ing started, but failed to do so, and if you further find in so doing, the driver of the Chevrolet automobile failed to exercise the highest degree of care and that such failure * * * was negligence, and that such negligence was the sole cause of the collision and that whatever injuries and damages, if any, plaintiff sustained on the occasion in question, and that such alleged injuries and damages, if any, were not due to the negligence on the part of the operator of the bus in any of the particulars set out in other instructions herein * * *."

■ It is first urged that the giving of any sole cause instruction was error for the reason that defendant was negligent as a matter of law so that any negligence of the driver Owen could only be a concurring and not a sole cause of the injury; that under defendant's theory of the case, taking the evidence in the light most favorable to defendant, and as a matter of law, the bus driver upon discovering the rapidly approaching automobile some 30–35 feet north of the intersection had time and distance within which to have stopped the bus at the center line of the intersecting street and thus have avoided the collision. With this we cannot agree. Assuming that the bus driver could have seen the automobile at the time the front of the bus was 10 feet east of the building line on the east side of Leffingwell, and assuming from the photographs that the width of the sidewalk was 12 feet, the bus at that time was 40 feet east and 2.66 seconds short of the place and time of the collision, even though we figure the speed of the bus at the *least* favorable figure of 10 miles per hour. Giving allowance for reaction time, the least distance within which the bus could have been stopped at 10 miles per hour would have been 41.25 feet; at 15 miles per hour, 56.8 feet. Taking the testimony of Pugh that he was 5 feet east of the building line when he first saw the automobile, the bus at that time would have been 35 feet east and only 1.1 or 2.33 seconds (depending upon whether its speed was 10 or 15 miles per hour) short of the place and time of the collision. Under defendant's evidence it was a question of

fact for the jury, and not for the court, to determine whether the bus operator was in the exercise of due care. We cannot convict him of negligence as a matter of law.

Not only was there evidence from which the jury could have found that the bus operator was not negligent, but defendant's evidence justified the assertion of a sole cause defense: Owen operating his automobile southwardly at a high and excessive rate of speed, approaching the path of the bus at a time when the entrance of the bus into the intersection was imminent, driving his automobile so suddenly toward the path of defendants' bus and in so close proximity thereto when the bus was traveling at such a rate of speed that the bus driver, in the exercise of the highest degree of care, could not have prevented the bus from colliding with the automobile in which plaintiff was riding. See Prater v. Rausch, 344 Mo. 888, 129 S.W.2d 910. Defendant's evidence with respect to Owen's conduct entitled defendant to a proper sole cause instruction. See Jants v. St. Louis Public Service Co., 356 Mo. 985, 204 S.W.2d 698.

Defendant's sole cause Instruction No. 8, however, as drawn and given to the jury contained reversible error. It submitted diametrically opposite concepts, namely, that the driver did not stop the automobile, and that he did stop it. It first hypothesizes failure to stop at the stop sign—violation of the major stop sign by running into Locust Street and in front of the bus— and then in the conjunctive hypothesizes failure to "remain stopped" or failure to "stop after having started." These latter recitals imply that the automobile stopped before it entered the intersection. The instruction therefore is self-contradictory, for it is obvious that an automobile cannot at the same time stop and fail to stop. Such an admixture of inconsistent hypotheses could have had no other effect than to confuse and mislead the jury. Furthermore, the reference to the violation of the stop sign was erroneous for the reason that it created the impression that plaintiff could not recover under the humanitarian doctrine if Owen ran the stop sign.

From the fact that Owen ran the stop sign, if it be a fact, it does not necessarily follow that the bus operator could not have avoided the collision after the automobile entered, or had entered, the zone of imminent peril. The failure to observe the stop sign, at most, constituted primary negligence. Primary negligence of the driver of the automobile is no defense where the plaintiff's case is based on a violation of the humanitarian rule. The negligence of plaintiff or of the driver of the automobile in which plaintiff was riding in going into or being in a position of peril would not create any exception to the humanitarian rule. "The very essence of that rule is to exclude the negligence of the one invoking it. When the humanitarian rule begins to operate, all prior and antecedent negligence of either party goes out of the case, and the sole question left is the ability of the defendant to prevent the injury under the then conditions." Millhouser v. Kansas City Public Service Co., 331 Mo. 933, 55 S.W.2d 673, loc. cit. 675. See also Larey v. Missouri-Kansas-Texas R. Co., 333 Mo. 949, 64 S.W.2d 681. If a sole cause instruction is submitted upon the same facts on a retrial any reference to failure to observe the stop sign should be eliminated. Furthermore, Instruction No. 8 too narrowly restricts the zone of imminent peril to the time when the automobile "drove in front of" the bus. In this respect the instruction was confusing and misleading as to the time when the situation of imminent peril and the consequential duty of defendant arose. It should be couched in language similar to that suggested by Hyde, J., in the comparable situation in Prater v. Rausch, supra. It should further be borne in mind that a sole cause instruction must hypothesize facts, a finding of which would exclude defendant's negligence as a possible concurring cause of the collision. Johnson v. Cox, Mo.Sup., 262 S.W.2d 13. Instruction No. 7 contained the requirement missing in Instruction No. 8 that the jury find that at the time the automobile entered a position of imminent peril it was too late for the operator of the bus to have taken the preventive action to avoid a collision, but there is no need for two instructions submitting the same theory. Pulley v. Scott, 362 Mo. 1217, 247 S.W.2d 767.

Defendant urges that by Instruction No. 9 plaintiff adopted defendant's Instruction No. 8 and therefore is precluded from complaining of error in respect thereto. Instruction No. 9 advised the jury that on the issue of sole cause if defendant was negligent under the humanitarian doctrine, and Owen was negligent, and that the negligence of the two directly combined and concurred in causing injury to plaintiff, the jury should find the issues of sole cause for plaintiff. Plaintiff objected to the giving of No. 8, and in offering No. 9 was not adopting No. 8 but was merely offering an explanatory, clarifying instruction under which plaintiff could avoid the effect of the sole cause instruction. Under such circumstances the principle of adoption and waiver is inapplicable. See Kelly v. Lahey, Mo.App., 232 S.W.2d 177, loc. cit. 180.

For the reasons given it is the recommendation of the Commissioner that the judgment of the circuit court be reversed and the cause remanded for a new trial.

PER CURIAM.

The foregoing opinion of HOUSER, C., is adopted as the opinion of the court.

The judgment of the circuit court is, accordingly, reversed and the cause remanded for a new trial.

ANDERSON, P. J., BENNICK, J., and BROADDUS, Special Judge, concur.