**Mary LONG, Myrtle French and Barbara Gess, Plaintiffs-Respondents,**

v.

**E. B. KOONCE MORTUARY, INC., a Corporation, Defendant-Appellant.**

**Nos. 33349, 33350, 33361.**

St. Louis Court of Appeals.

Missouri.

Sept. 16, 1969.

Motion for Rehearing or to Transfer to Supreme Court Denied Oct. 14, 1969.

Application to Transfer Denied Dec. 8, 1969.

Moser, Marsalek, Carpenter, Cleary & Jaeckel, Joseph H. Mueller, St. Louis, for defendant-appellant.

Gossom & Ruhland, Sommers & Montrey, Don B. Sommers, St. Louis, for plaintiffs-respondents.

LYON ANDERSON, Special Commissioner.

Mary Long, Myrtle French and Barbara Gess each instituted separate actions against E. B. Koonce Mortuary, Inc., and Quarrier Jones, to recover damages for personal injuries sustained by them as a result of a collision between a limousine, which belonged to defendant Koonce in which they were passengers, and an automobile being driven by defendant Jones.

On motion of defendant Koonce, the cases were consolidated for trial. The trial resulted in verdicts in favor of each plaintiff, against both defendants and a judgment was entered accordingly. Defendant Koonce has appealed from the judgment, which became final after the overruling of said defendant's motion for new trial as to all plaintiffs following a remittitur by plaintiff Mary Long of a part of the verdict and judgment. Defendant Jones did not file any after-trial motion, nor did she appeal from said judgment.

Each petition avers the corporate capacity of defendant, E. B. Koonce Mortuary, Inc., that on or about March 23, 1966, while each plaintiff was riding as a passenger in a limousine owned and being operated by said defendant, northwardly on Kingshigh-

way Boulevard near its intersection with McPherson Avenue, in the city of St. Louis, Missouri, defendant Jones operated a motor vehicle in a general westwardly direction from an alley, and the two vehicles collided. The petitions contained various averments of alleged negligence on the part of the defendants. Among those directed against defendant Jones was failure on her part to yield the right of way to automobiles traveling along Kingshighway, and among those directed against defendant Koonce was failure to keep a lookout ahead and laterally. Each petition contains averments of alleged injuries and damages, but, because of the points being raised on this appeal, further reference to those portions of the petition will be omitted.

The answers of defendant Koonce to the petitions, admitted its corporate character and that, on May 23, 1966, one of its vehicles was involved in a collision with an automobile being operated by defendant Jones. There was then pled a general denial of all other allegations of each petition. There was a further plea that whatever injuries plaintiff sustained were the direct and proximate result of the sole negligence of defendant Jones.

The case was submitted as to defendant Koonce on the hypothesis that said defendant's driver failed to keep a careful lookout. On this appeal defendant Koonce contends that plaintiffs failed to make a submissible case on the issue submitted, and for that reason the trial court erred in overruling its motion for a directed verdict at the close of all the evidence and its after-trial motion for judgment in accordance with said motion for a directed verdict.

The collision occurred on Kingshighway Boulevard opposite an alley which extends eastwardly from said Boulevard. The alley is in the block south of McPherson Avenue, an east and west street. Kingshighway is a north and south thoroughfare with six driving lanes, three for northbound traffic and three for southbound traffic. It is straight and level for several blocks north and south of the alley. At the time of the accident the pavement was dry. It was a clear day. The center of Kingshighway was marked by a yellow line.

There was an electric signal device at the intersection of Kingshighway and McPherson regulating traffic on both streets.

The husband of plaintiff, Mary Long, who was the father of plaintiffs Myrtle French and Barbara Gess, had died and his remains were at the funeral home of defendant Koonce on the day of the accident. Plaintiffs had taken some clothing of the deceased to the funeral home, and while there decided to go to a floral shop to select flowers to place around the casket. Defendant Koonce furnished them a car (limousine) and a driver, Leslie James Jackson, who was an employee. They were returning from the floral shop when the accident happened. Mary Long occupied the front seat to the right of the driver. Myrtle French and Barbara Gess were in the rear seat. Jackson drove into Kingshighway at its junction with Highway 40, which was some distance south of the point of the accident.

The three lanes on Kingshighway east of the center line of the street were being used for moving traffic. No cars were parked at the east curb. Jackson drove northwardly in the lane just east of the yellow center line. There were other cars in the same lane approximately three or four car lengths ahead of him as he proceeded toward the McPherson intersection.

Mrs. Quarrier Jones drove her station wagon westwardly from the alley into the third lane of Kingshighway intending to make a left turn and proceed southwardly.

Defendant Jones and Leslie James Jackson, the driver of the Koonce limousine, were both called as witnesses for the plaintiffs.

Testifying as plaintiffs' witness defendant Jones said she stopped her car at the

east curb of Kingshighway. At that time the electric signal at McPherson displayed a red light for northbound traffic. For that reason the vehicles in the curb lane and second lane from the curb came to a stop. These cars were backed up from McPherson to the alley, and the cars to her left in the first two lanes stopped in such a position as to permit her to drive in front of them. The path left in front of her was roughly equivalent to the width of the alley. The drivers of the first car in each lane, " * * * waved me out. And I proceeded very slowly to move out of the alley in front of them." Mrs. Jones further testified that the speed of her car as she proceeded to drive in front of the vehicles stopped in the first two lanes was under five miles per hour. Before proceeding into the third lane she again stopped her car. At that time the front of her car was at the line between the second and third lane. She looked to her right, but did not see any car coming from the north. She then looked to her left but could not see very far on account of the cars in the second lane; not far enough " * * * to know that I could make a safe left turn." She then drove forward so that portion of her car in front of the front wheel was in the northbound lane next to the center line, in which position her car was brought to a stop. She glanced to the right and then looked to her left and saw a limousine coming from the south, in the third lane, " * * about a car length or a little bit over away." There was no traffic moving in the southbound lanes when she glanced to her right. The front end of the limousine had not reached the rear end of the car in the second lane immediately to her left when she first saw it. She did not sound the horn on her car. She did not have time to put the car in reverse. She stated, " * * * all the time I had was to get scared." The limousine did not swerve in either direction or reduce its speed. She did hear brakes squeal when the limousine hit her car. The initial impact was at the left front tire to the front of the car. She stated she thought the whole front of the limousine

was involved. The impact moved her car sideways. Her car was driveable after the accident, but the limousine was not.

Leslie Jackson, the driver of the limousine, was also called as a witness by plaintiff. He testified that from Lindell he drove in the northbound lane next to the center line. He remained in that lane until the accident happened just south of McPherson. There was other traffic three or four car lengths ahead of him in the same lane. He observed the traffic light at McPherson change to red for north and south traffic as he came near the alley. His attention was attracted to this change by other cars to his right coming to a stop. He then removed his foot from the accelerator, and the speed of his car was reduced. He did not apply the brakes. He did not know how far his car was from the point of collision when he did this. The maximum speed of his car after he crossed Lindell to the point where he began to reduce his speed and when he saw the other cars begin to stop was approximately twenty miles an hour. The traffic ahead of him, in the same lane, had not stopped, but those in the two lanes to his right did. There were ten or more cars to his right stopped south of the alley. North of the alley, there were cars stopped up to the stop light at McPherson. He traveled three or four car lengths after he took his foot off the accelerator before he saw the Jones' car. It was at the white line separating his lane from the lane to his right. The Jones' car was moving. His car was then about a half car length from the point of collision and was moving about five miles per hour. He could not tell how fast the Jones' car was moving. It did not stop before the collision. Its course, after he saw it, was toward the west heading south on Kingshighway. He stated he could stop the limousine within a car length moving at five miles an hour. He further stated that when he saw the Jones' car, he sounded the horn and slammed on the brakes, but his car did not stop before, but did stop with the

impact. He did not swerve to the left because of southbound cars, but continued straight ahead. The impact occurred on the left front fender of the limousine, and the left side of the Jones' station wagon. The damage to the Cadillac was to the left front side. The front left fender was bent down and the bumper pushed back. Also the radiator on its left side was pushed back. The damage to the Jones' car was to the left side. The impact caused his car to be shoved to the left a distance about equal to the width of a tire. As he approached the alley he could not see a space between the northbound cars at the alley. He looked straight ahead, and made no attempt to see whether any cars were coming out between the cars in the other two lanes of traffic. He stated that the Jones' car moved all the way across in front of his car before the collision.

Mary Long testified that she was not paying any attention to the driving of the limousine prior to the accident, and did not see the Jones' car before the collision; that she did not notice any improper driving on the part of the driver; that there was traffic ahead of and behind the limousine; and that she did not know whether there was any reduction of speed of the limousine before the impact.

On cross-examination Mrs. Long testified she told the police officer that Jackson was driving very slowly at the time of the accident, and suddenly applied the brakes. She further stated she did not see the Jones' car, " * * * until it had rammed into our car." She did not hear Jackson blow the horn at the scene of the accident.

Myrtle French testified she did not see the Jones' car before the accident. She further stated she did not hear the sound of a horn, and had no warning that there was going to be an accident; that Jackson was driving at a normal rate of speed; and that the Jones' car and the limousine were both in their traffic lane after the accident. She further testified she did not feel the brakes go on before the accident occurred.

Barbara Gess testified she had no warning that an accident was pending, but " * * * I did feel the car coming to a sudden stop * * *." She did not see the Jones' car before the accident. The Jones' car was in their lane after the accident. It was blocking the lane almost completely and was angled toward the south and west. She stated that the front of the Jones' car was almost to the yellow line.

Russell Webster, a police officer, was called as a witness for defendant Koonce. He testified the vehicles had not been moved when he arrived at the scene of the accident. The limousine was facing north, and the Jones' car was facing west and a little angled toward the south. He obtained statements from Jackson and Mrs. Jones.

"Q. Officer, would you please tell the jury what Mrs. Jones told you at the scene?

"A. She said she pulled out of the alley to go across Kingshighway, and she stopped to look if any traffic was coming and didn't see any, and the driver in the vehicle in the second lane motioned for her to come ahead, and she pulled out in the center lane and was struck by Vehicle No. 1.

\*　　\*　　\*　　\*　　\*　　\*

"Q. Officer, was the Ford station wagon driveable?

"A. It was.

"Q. And what about the limousine?

"A. Well, we towed it to the curb due to the fact that the left front fender was back against the tire."

Being cross-examined by plaintiffs' counsel, the officer stated that to the best of his knowledge, the damage sustained by the Ford was to the left front fender

extending backward from a point about 18 inches from the bumper, a distance of 18 to 24 inches. The photograph of the front of the limousine shows its left front fender pushed in from front to rear, and the front bumper bent back.

Being cross-examined by counsel for defendant Jones the officer said he did not notice any skid marks at the scene of the accident, and that the fender of the Ford extended a foot or two into the third northbound lane next to the center line.

Appellant contends that the trial court should have sustained its motion for a directed verdict at the close of all the evidence. In support of this contention it is urged that plaintiffs, having presented Jackson's testimony, are bound by it, and since his testimony failed to show that he could have seen the Ford automobile before he was a half car length from it, the jury could not reasonably find that he failed to keep a careful lookout, without resorting to speculation and conjecture.

In connection with this assignment it is argued that the testimony of Mrs. Jones that she stopped with the front end of her car in the third lane, and saw the limousine approaching from her left more than a car length away, was without probative value because it was in conflict with the physical facts as shown by the photographs and the testimony of Myrtle French and Barbara Gess. The photographs were introduced in evidence by defendant Koonce. They showed damage to the left front fender of the limousine, and to the left side of the Ford. Myrtle French testified that both vehicles were in the third lane after the collision. Barbara Gess testified that after the collision the Ford was in their lane, at an angle, with its front end almost to the yellow line marking the center of the street.

■ Plaintiffs were not bound by the testimony of Jackson. Nor was all of the testimony of Mrs. Jones with reference to her actions and observations as she proceeded into the third lane without probative value. Her testimony that she looked to the left as she reached the third lane and saw the limousine more than a car length away was not contradicted by any of the plaintiffs. Their testimony as to the location of the Jones' car after the accident, and the physical facts as shown by the photographs, merely tend to show that Mrs. Jones drove her car further into the intersection than just the front end. It does not contradict her testimony that she looked south when she reached a point where she could clearly see in that direction and observed the limousine more than a car length away. This testimony was not without probative value, and can be considered with the other evidence in determining whether plaintiffs made a case for the jury on the issue submitted. De Lay v. Ward, 364 Mo. 431, 262 S.W.2d 628.

■ Considering the evidence in a light most favorable to plaintiffs, as we must, the jury could believe and find from the testimony that at the time Mrs. Jones entered the third lane Jackson was more than a car length away traveling at a speed of five miles per hour. At that time he should have seen the Jones' car in his lane directly in front of him. Under the facts shown by the evidence Jackson was under a duty to keep a lookout, and he is charged with seeing what he could have seen whether he looked or negligently failed to look.

If Jackson was traveling at five miles an hour he was moving at the rate of 7.33 feet per second. There is no evidence of reaction time hence we will allow him for that three-fourths of a second. Vietmeier v. Voss, Mo., 246 S.W.2d 785. In three-fourths of a second he would travel 5.46 feet before he could have reacted to the situation before him and applied the brakes, or swerved to the left since there was evidence that there were no southbound cars to his left. While we do not judicially know the exact stopping distance of an automobile travelling at five miles per hour, after the brakes

have been applied, we do know that with good brakes it can be stopped in a few feet and that under the facts of this case the jury could reasonably have found the limousine could have been stopped short of the point of collision. See Hamell v. St. Louis Public Service Co., Mo.App., 268 S.W.2d 60; Smith v. St. Louis Public Service Co., Mo.App., 252 S.W.2d 83.

We hold that plaintiffs made a case for the jury against defendant Koonce on the charge of negligent failure to keep a lookout.

The judgment is affirmed.

PER CURIAM.

The foregoing opinion by ANDERSON, Sp. C., is adopted as the opinion of this court. Accordingly, judgment affirmed.

WOLFE, P. J., BRADY, J., and BRUCE NORMILE, Special Judge, concur.